**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | Case No.: 15-34287 (MI) |
| OPERATIONS, LLC | § | |
| | § | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 363(m),
364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND BANKRUPTCY
RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-
PETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE
CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO HOLDERS
OF SENIOR NOTES AND (IV) SCHEDULING FINAL HEARING**

Upon the motion, dated December 6, 2015 (the "Motion"), of Black Elk Energy Offshore

Operations, LLC ("Black Elk") as debtor and debtor-in-possession (collectively, the "Debtor") in

the above-captioned case (the "Case") for interim and final orders under sections 105, 361, 362,

363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002,

4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy

Rules") seeking:

    (1)    authorization for Black Elk to obtain post-petition financing in the aggregate

           principal amount of $30,000,000, including $2,965,000 of Term Loans[1] and

           $2,965,000 of Rolled-Up Loans on an interim basis on the terms and conditions

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, substantially in the form annexed to the Motion as Exhibit B (as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Agreement," together with all agreements, documents and instruments executed and delivered in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Documents").

set forth in this interim order (this "Interim Order") and the DIP Agreement among Black Elk and [_____] ("[_____]"), as administrative agent and collateral agent (in such capacities, the "DIP Agent") for the Lenders;

(2)     authorization for the Debtor to execute and deliver the DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(3)     authorization for the Debtor to (a) use Cash Collateral[2] pursuant to Bankruptcy Code section 363, and all other Pre-petition Collateral (as defined in paragraph 4(c) below), and (b) provide adequate protection to the holders of Senior Notes (as defined in paragraph 4(a) below);

(4)     authorization for the DIP Agent to exercise remedies under the DIP Documents upon the occurrence and during the continuance of an Event of Default;

(5)     authorization to grant liens to the Lenders and holders of Senior Notes on the proceeds of the Debtor's claims and causes of action (but not on the actual claims and causes of action) arising under Bankruptcy Code sections 544, 545, 547, 548, 549 and 550 (collectively, the "Avoidance Actions") provided, however, that no holder of a Senior Note shall have a lien against the proceeds of Avoidance Actions initiated against itself and/or its affiliates;

(6)     the waiver by the Debtor of any right to seek to surcharge against the DIP Collateral (as defined in paragraph 12 below) pursuant to Bankruptcy Code section 506(c) upon entry of a final order; and

---

[2] The term "Cash Collateral" shall have the meaning set forth in Bankruptcy Code section 363(a).

(7)     the Court's scheduling a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis and authorizing the balance of the borrowings under the DIP Documents on a final basis, as set forth in the Motion and DIP Documents filed with this Court.

An interim hearing having been held by this Court on December 15, 2015 (the "Interim Hearing") and due and proper notice of the Interim Hearing on the Motion having been given by the Debtor and upon the record made by the Debtor at the hearing, including the *Declaration of Lance Gurley, of Black Hill Partners* (the Debtor's financial advisor) and the *Declaration of Jeffrey Jones, the Chief Restructuring Officer of the Debtor*, and all objections to the entry of this Interim Order having been overruled, withdrawn or resolved pursuant to the terms of this Interim Order, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction*.  This Court has core jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice*.  Notice of the Motion and the relief requested therein was served by the Debtor on (i) counsel for the Committee; (ii) the U.S. Trustee; (iii) all parties who have requested notice in this Case; (iv) all parties who have asserted liens against the Debtor's assets as part of this Case, (v) all parties reflected in the Debtor's books and records as having and/or asserting a lien against the Debtor's assets; and (vi) all registered ECF users appearing in the Case as of December 6, 2015.  The notice given by the Debtor of the Motion, the relief requested therein, and the Interim Hearing constitutes due and sufficient notice thereof and complies with

Bankruptcy Rules 4001(b) and (c), and the Local Rules, and no further notice of the relief sought at the Interim Hearing is necessary or required.

3.   *Approval of Motion.*  The relief requested is approved as described herein.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.   *Debtor's Stipulations.*  Without prejudice to the rights of any non-Debtor party-in-interest (but subject to the limitations thereon contained in paragraphs 22 and 23), the Debtor admits, stipulates, and agrees as follows; provided, however, that such stipulations, agreements, and admissions shall not inure to the benefit of Platinum Partners Value Arbitrage Fund, LP, and its affiliates (collectively "Platinum"[3]) in any capacity:

> (a)   as of the Conversion Date, the Debtor was truly and justly indebted to the Bank of New York as Indenture Trustee, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $68,567,000.00 in respect of 13.75% Senior Secured Notes due 2015 issued pursuant to the Indenture (the "Senior Notes"), plus accrued and unpaid interest thereon, plus additional amounts owed under the Indenture, including defaulted interest, fees, expenses, costs, and all other amounts due and owing under and in connection with the Indenture (collectively, the "Pre-petition Obligations");
>
> (b)   the Pre-petition Obligations constitute the legal, valid and binding obligations of the Loan Parties, enforceable in accordance with their terms;
>
> (c)   the liens and security interests granted by the Debtor to the Indenture Trustee (for the ratable benefit of holders of Senior Notes under the Indenture) to secure the Pre-petition Obligations (the "Pre-petition Liens") are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Indenture) liens on and security interests in the personal and real property of such Debtor constituting "Collateral" under, and as defined in, the Indenture (together with Cash Collateral, the "Pre-petition Collateral"), (ii) with respect to the Lenders, are not subject to objection, defense, contest, avoidance, reduction, disallowance or subordination (whether equitable, contractual or otherwise) of any kind

---

[3] For purposes of the definition of "Platinum," the Debtor and its subsidiaries shall not be deemed affiliates of Platinum.

pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity and (iii) subject and subordinate only to (A) after giving effect to this Interim Order, the Carve-Out (as defined in paragraph 11(b) below), the lien granted pursuant to the 9019 Order and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations (as defined in paragraph 19 below) and (B) other valid and unavoidable liens perfected prior to the Conversion Date (or perfected after the Conversion Date to the extent permitted by Bankruptcy Code section 546(b)) which are permitted under the Indenture to the extent such permitted liens are senior to the liens securing the Pre-petition Obligations;

(d)     no portion of the Pre-petition Obligations and no amounts paid at any time to the Indenture Trustee or any Lender on account thereof or with respect thereto shall be subject to objection, defense, counterclaim, claim (as such term is defined in the Bankruptcy Code), offset, contest, avoidance, recharacterization, reduction, disallowance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and

(e)     no claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights of the Debtor exist against any of the Lenders or the Indenture Trustee and their respective Pre-petition Obligations and Pre-petition Liens under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to Bankruptcy Code section 105 or chapter 5 (including, without limitation, Bankruptcy Code sections 510, 544, 547, 548, 549 or 550) or under any other similar provisions of applicable state or federal law, and to the extent any claims, objections, challenges, counterclaims, causes of action and/or choses in action, defense or setoff rights are deemed to have existed as to any of the foregoing, the Debtor hereby forever waives, discharges and releases any right that it may have to challenge any of the Pre-petition Obligations and the Pre-petition Liens, and to assert any setoff rights, defenses, claims, objections, challenges, counterclaims, causes of action and/or choses of action whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Indenture Trustee and the Lenders (only in their capacities as such), and as to each of the foregoing, their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, in each case in connection with any matter related to the Pre-petition Obligations, the Pre-petition Liens, the Indenture and transactions contemplated thereby, or the Pre-petition Collateral.

5.      *Findings Regarding the DIP Loans, the Use of Cash Collateral and the Pre-petition Collateral.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtor requires the DIP Loans and needs to continue to use the Pre-petition Collateral, including the Cash Collateral, to, among other things, permit the orderly continuation of its business and to allow for a

successful reorganization and/or sale of the Debtor's assets on a going concern basis.

(c)     The Debtor is unable to obtain financing on more favorable terms from sources other than the Lenders pursuant to, and for the purposes set forth in, the DIP Documents and is unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2) and 364(c)(3) without granting priming liens under Bankruptcy Code section 364(d)(1) and the Superpriority Claims (as defined in paragraph 11(a) below) on the terms and conditions set forth in this Interim Order and the DIP Documents.

(d)     The terms of the use of the DIP Loans and the Pre-petition Collateral, including the Cash Collateral, pursuant to this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Pre-petition Collateral, including the Cash Collateral, have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtor, the DIP Agent, and the Lenders, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Documents, this Interim Order and the DIP Loans (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Agent and the Lenders in "good faith" as such term is used in Bankruptcy Code sections 363(m) and 364(e), and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of Bankruptcy Code sections 363(m) and 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     Absent granting the final relief set forth in this Interim Order, the Debtor's estate and business operations will be immediately and irreparably harmed.  In particular, the Debtor requires immediate post-petition financing, and continued use of the Pre-petition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of its business and to allow for a successful reorganization and/or sale of the Debtor's assets on a going concern basis.  The borrowing of the DIP Loans and the use of the Pre-petition Collateral, including the Cash Collateral, in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Debtor's estate.

6.     *Authorization of the DIP Loans and the DIP Documents.*

(a)     The Debtor is hereby authorized to enter into and perform under the DIP Documents and to borrow, subject to the terms of the DIP Agreement an aggregate principal amount of $2,965,000 of Term Loans for working capital and other general corporate purposes of the Debtor and $2,965,000 of Rolled-Up Loans in exchange for cancellation in an equivalent

aggregate principal amount of Senior Notes held by the Lenders, as set forth in Section 2.01 of the DIP Agreement (the "DIP Loan").

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts (and to the extent such acts have already occurred, such acts are hereby ratified) and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtor's performance of their obligations under the DIP Documents, including without limitation:

    (1)    the execution, delivery and performance of the DIP Documents;

    (2)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the DIP Documents and in such form as the Debtor, the DIP Agent and the Lenders may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents (and any fees paid in connection therewith) that do not materially and adversely affect the Debtor or which do not (A) shorten the maturity of the DIP Loans, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive;

    (3)    the non-refundable payment to the DIP Agent and the Lenders, as the case may be, of the fees set forth in the DIP Documents, including without limitation any upfront or administrative agency fee, and referred to in one or more fee letters executed among the Debtor and the DIP Agent and reasonable costs and expenses as may be due from time to time as provided in this Interim Order, including, without limitation, reasonable attorneys' fees and other professional fees and disbursements as provided in the DIP Documents;

    (4)    [making payments, if any, in respect of Adequate Protection Obligations as provided for in this Interim Order and the DIP Agreement]; and

    (5)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim Order and the DIP Documents.  No obligation, payment, transfer or grant of security by the Debtor under the DIP Documents or this Interim Order shall be voidable, avoidable or recoverable under the

Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under Bankruptcy Code sections 502(d) or 548 or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    *Refinancing of the Rolled-Up Loans.*

(a)    The refinancing of $2.965 million of the Pre-petition Obligations in accordance with this Interim Order and the DIP Documents is necessary to the estate, as the DIP Agent and the Lenders will not otherwise extend credit to the Debtor under the DIP Agreement, which includes $2.965 million in new money.

(b)    $2.965 million of the Pre-petition Obligations owed to the Lenders as of the date refinanced under the DIP Agreement shall refinance (the "Refinancing") that portion of the Pre-petition Obligations eligible to be refinanced pursuant to the DIP Documents (the "Refinanced Obligations"). The Refinancing shall be effected pursuant to a cashless exchange (i.e., not involving any cash payment in respect of any principal or interest). Specifically, in accordance with Section 2.10(b) of the DIP Agreement, each Rolled-Up Lender's Rolled-Up Allocation of the Senior Notes held by such Rolled-Up Lender and/or its Affiliates and/or its designees shall be deemed to have been made as a term loan by such Rolled-Up Lender and/or its Affiliates and/or its designees, and borrowed by the Borrower, under the DIP Agreement (the "Rolled-Up Loans"). The deemed borrowing by the Borrower of the Rolled-Up Loans shall entitle the Borrower to receive for cancellation an equivalent aggregate principal amount of Senior Notes from each Rolled-Up Lender and/or its affiliates and/or its designees based upon such Rolled-Up Lender's Rolled-Up Allocation and shall not entitle the Borrower to receive any cash or other consideration from any Rolled-Up Lender and, notwithstanding that no such cash or other consideration is exchanged, the Borrower shall owe the aggregate principal amount of the Rolled-Up Loans to the Rolled-Up Lenders under the DIP Agreement and not under the Indenture.

(c)    The Debtor's refinancing of the Refinanced Obligations shall be deemed to be indefeasible, final and not subject to challenge.

8.    *Right to Credit Bid.* The DIP Agent, on behalf of the Lenders, shall have the right to "credit bid" the full amount of the DIP Obligations, during any sale of all or any portion of the DIP Collateral (as defined below), as applicable, or any deposit in connection with such sale, including, without limitation, any sales occurring pursuant to Bankruptcy Code section 363 or included as part of any reorganization plan subject to confirmation under Bankruptcy Code section 1129. For purposes of any such bid or deposit, the portion of the DIP Obligations "credit

bid" by the DIP Agent shall be treated for all purposes as a cash bid or deposit.  The DIP Agent shall each have the absolute right to assign, sell, or otherwise dispose of its respective right to credit bid in connection with any credit bid by or on behalf of the DIP Lenders, or any acquisition entity or joint venture formed in connection with such bid.

9.      *DIP Budget*.  Attached as __Exhibit A__ hereto and incorporated by reference herein is the 13-week budget (which has been approved by the DIP Agent, the Lenders and the Indenture Trustee) setting forth the Debtor's projected receipts and disbursements (the "DIP Budget").  The Debtor shall deliver the DIP Budget consisting of weekly Thirteen Week Forecasts delivered to the DIP Agent commencing on the Effective Date and each week thereafter, detailing the Loan Parties' weekly cash flow forecasts on a rolling 13-week basis, in form and substance satisfactory to the Lenders, in accordance with the DIP Agreement.  The Debtor's use of Cash Collateral and other unrestricted cash and cash equivalents shall be consistent with the types of expenses set forth in the DIP Budget.  The DIP Agent and the Lenders shall have no obligation with respect to the Debtor's use of the Cash Collateral, and shall not be obligated to ensure or monitor the Debtor's compliance with the DIP Budget or to pay (directly or indirectly from the Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the DIP Budget.  Any and all Cash Collateral and unrestricted cash and cash equivalents shall be used by the Debtor in accordance with this Interim Order and the DIP Budget.  The DIP Agent's, the Indenture Trustee's and the Lenders' consent to the DIP Budget shall not be construed as consent to the use of any Cash Collateral after the occurrence of an Event of Default, regardless of whether the aggregate funds shown on the DIP Budget have been expended.  Notwithstanding anything in this Interim Order or in the DIP Budget to the contrary, the Debtor shall be deemed to have expended all cash and cash equivalents not constituting Cash

Collateral (including unrestricted cash and cash equivalents held by any Subsidiary) until the same has been exhausted before spending cash and cash equivalents that constitutes Cash Collateral.   Notwithstanding anything to the contrary contained herein, no payment shall be made pursuant to this Interim Order to any professional retained pursuant to an order of the Court (each, a "Professional") to the extent that it would cause the aggregate amount paid to such Professional to exceed the aggregate amount of fees and expenses set forth in the DIP Budget with respect to such Professional through the end of the applicable period for which payment is being requested (the "Budgeted Fees and Expenses"), it being understood that amounts unpaid as a result of the preceding limitation may be accrued and, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of this Court, paid in any subsequent period(s) to the extent that actual fees and expenses incurred in such subsequent period(s) are less than the Budgeted Fees and Expenses in such subsequent period(s); provided, however, that nothing in this Interim Order shall limit any Professional's right to request, or the Court's power to authorize, the allowance of fees and expenses pursuant to Bankruptcy Code sections 330 and 331.

      10.    *Lender Fees and Expenses*.   Consistent with the DIP Credit Agreement, the Debtor shall pay to the Lenders all reasonable and documented fees and expenses related to the Debtor incurred by the Lenders in any capacity, including without limitation, the reasonable and documented fees and disbursements of counsel and financial advisor to the Lenders in their capacity as Lenders or as holders of Senior Notes including, without limitation, such fees and disbursements incurred in connection with (i) the negotiation and documentation of the DIP Documents, including the DIP Agreement, this Order and any and all associated documents and

(ii) any and all other matters and issues that arise during the course of the Case. None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtor shall pay the reasonable and documented fees and expenses provided for in this paragraph within ten (10) days following receipt of invoices therefor by the Debtor, provided that, upon any objection to the reasonableness of such fees, the Debtor shall pay all amounts that are not the subject of such objection within the ten (10) day period and shall pay the balance following the resolution of such objection or upon an order of the Court.

11.    *Superpriority Claims*.

(a)    Except to the extent expressly set forth in this Interim Order in respect of the Carve-Out and the lien granted pursuant to the 9019 Order and priority administrative claims granted under the 9019 Order, pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtor with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)    For purposes hereof, the "Carve-Out" shall mean (a) any fees payable to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code and (b) up to $50,000 of allowed and unpaid fees and expenses, (regardless of when such fees and expenses become allowed by order of the Bankruptcy Court but consistent with the DIP Budget) of professionals retained by order of the Bankruptcy Court, incurred after the occurrence of a Carve-Out Event (as defined below), (c) allowed, accrued and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Bankruptcy Court) of professionals retained by order of the Bankruptcy Court  (or whose application for retention is then pending provided such application is ultimately approved), incurred on or prior to

the occurrence of a Carve-Out Event and are consistent with the DIP Budget and (d) any and all reasonable fees and expenses incurred by a trustee under Bankruptcy Code section 726(b) not to exceed [$TBD]. For the purposes hereof, a "Carve-Out Event" shall occur upon the occurrence and during the continuance of an Event of Default and upon delivery of a written notice thereof to the Debtor (a "Carve-Out Notice"). So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses and disbursements of professionals retained by order of this Court allowed by this Court and payable under Bankruptcy Code sections 328, 330 and 331, which allowed fees, expenses and disbursements shall be paid in accordance with and subject to the DIP Budget. Notwithstanding anything herein to the contrary, the Debtor shall first direct all professionals subject to the Carve-Out to fully utilize the retainers held by such professionals and fully utilize unrestricted cash and cash equivalents held at Black Elk and its Subsidiaries to pay allowed fees and expenses comprising the Carve-Out prior to utilizing any DIP Collateral or Pre-petition Collateral or proceeds of either that secure the obligations arising under the DIP Documents, the Indenture or any Adequate Protection Obligations owed to holders of Senior Notes. Upon the delivery of a Carve-Out Notice, the right of the Debtor to pay professional fees incurred under clause (b) above without reduction of the Carve-Out in clause (b) above shall terminate and upon receipt of such notice, the Debtor shall provide immediate notice by facsimile and email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtor's ability to pay professionals is subject to the Carve-Out; provided that (A) the Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the Lenders, or the Indenture Trustee; provided that (A) the Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the Lenders, or the Indenture Trustee; provided further that solely in the event that the Lenders refuse to release funds for the Carve-Out after a Carve-Out Event in accordance with the DIP Credit Agreement and the Escrow Agreement and (i) there is capacity available under the Carve-Out and (ii) there are available Escrowed Loans in the Escrow Account, then the Carve-Out shall be available solely to pay professional fees and expenses incurred in connection with the Debtor's efforts to release the Carve-Out from the Escrow Account and (B) nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtor's estate. A waiver of an Event of Default triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtor to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Bankruptcy Court, as the same may be due and payable, without reducing the Carve-Out.

12.     *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the

date of this Interim Order and without the necessity of the execution by the Debtor (or

recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted by the Debtor to the DIP Agent, for itself and the benefit of the Lenders (all property of the Debtor identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject and subordinate only to the Carve-Out and the lien granted pursuant to the 9019 Order (all such liens and security interests granted to the DIP Agent pursuant to this Interim Order, the "DIP Liens"):

(a)     First Lien on Unencumbered Property.  Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible pre-petition and post-petition property of the Debtor, whether existing on or as of the Conversion Date or thereafter acquired, that is not subject to either (i) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Conversion Date, or (ii) a valid lien perfected subsequent to the Conversion Date as permitted by Bankruptcy Code section 546(b) (collectively, the "Unencumbered Property"); provided that the Unencumbered Property shall not include the Avoidance Actions, but shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)     Liens Junior to Certain Existing Liens.  Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible pre-petition and post-petition property of the Debtor (other than the property described in paragraph 12(c) below, as to which the DIP Liens will have the priority as described in such paragraph 12(c)), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Conversion Date or to valid and unavoidable liens in existence immediately prior to the Conversion Date that are perfected after the Conversion Date as permitted by Bankruptcy Code section 546(b) (collectively, the "Non-Primed Liens"), which security interests and liens in favor of the DIP Agent, for itself and the benefit of the Lenders, shall be junior to the Non-Primed Liens.

(c)     Liens Priming the Pre-petition Liens.  Pursuant to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Pre-petition Collateral (whether now existing or hereafter acquired).  The DIP Liens on the Pre-petition Collateral shall be senior in all respects to the Pre-petition Liens (including without limitation the Adequate Protection Liens (as defined in paragraph 19(a) below)), but shall be junior to any Non-Primed Liens on the Pre-petition Collateral.

(d) <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Bankruptcy Code section 551 or (B) any liens arising after the Conversion Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

13.     *Milestones*.  In accordance with Section 8.18 of the DIP Agreement, the Debtor shall comply with the following milestones (unless extended or waived by the Required Lenders):

(a)     On or prior to December 15, 2015, the Borrower shall obtain an order of the Bankruptcy Court approving the Interim Order;

(b)     On or prior to January 10, 2016, the Borrower shall obtain an order of the Bankruptcy Court approving the Final Order;

(c)     On or prior to February 28, 2016, the Borrower shall file a Reorganization Plan and accompanying disclosure statement in form and substance satisfactory to the Lenders in their sole discretion;

(d)     On or prior to March 28, 2016, the Borrower shall obtain an order of the Bankruptcy Court approving a disclosure statement, which order shall be in form and substance satisfactory to the Lenders in their sole discretion;

(e)     On or prior to May 15, 2016, the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Lenders in their sole discretion;

(f)     On or prior to the date that is 16 days from the entry of the Confirmation Order, but in no event later than May 31, 2016, the effective date of the Reorganization Plan in form and substance satisfactory to the Lenders shall have occurred.

14.     *Events of Default*.  In accordance with Section 10.01 of the DIP Agreement, one of more of the following events shall constitute an Event of Default:

(a)     the Borrower shall fail to pay any interest on or principal of any Loan or any fee or other amount when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof, by acceleration or otherwise.

(b)     any representation or warranty made or deemed made by or on behalf of the Borrower or any Subsidiary in or in connection with any Loan Document or any amendment or modification of any Loan Document or waiver under such Loan Document, or in any report, certificate, financial statement or other document furnished pursuant to or in connection with any Loan Document or any amendment or modification thereof or waiver

thereunder, shall prove to have been incorrect when made or deemed made in any material respect.

(c)     the Borrower or any Subsidiary shall fail to observe or perform any covenant, condition or agreement contained in Section 5.07, Section 8.01(i), Section 8.01(l), Section 8.02, Section 8.03, Section 8.15, Section 8.17, Section 8.18, Section 8.19 or Article IX of the DIP Agreement.

(d)     any Loan Party shall fail to observe or perform any covenant, condition or agreement contained in the DIP Agreement (other than those specified in Section 10.01(a) or Section 10.01(c) therein) or any other Loan Document, and such failure shall continue unremedied for a period of thirty (30) days after the earlier to occur of (i) notice thereof from the Administrative Agent to the Borrower (which notice will be given at the request of any Lender) or (ii) a Responsible Officer of the Borrower or such Subsidiary otherwise becoming aware of such default.

(e)     the Borrower or any Subsidiary shall fail to make any payment (whether of principal or interest and regardless of amount) in respect of any Material Indebtedness, when and as the same shall become due and payable if the effect of such event is to cause, or (with the giving of any notice or the lapse of time or both) to permit the holder or holders of such Debt (or a trustee or agent on behalf of such holder or holders) to cause, such Debt to become due prior to its stated maturity which is not stayed by the filing of the Case.

(f)     any event or condition occurs that results in any Material Indebtedness becoming due prior to its scheduled maturity or that enables or permits (with or without the giving of notice, the lapse of time or both) the holder or holders of any Material Indebtedness or any trustee or agent on its or their behalf to cause any Material Indebtedness to become due, or to require the Redemption thereof or any offer to Redeem to be made in respect thereof, prior to its scheduled maturity or require the Borrower or any Subsidiary to make an offer in respect thereof, in each case, which is not stayed by the filing of the Case.

(g)     an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) liquidation, reorganization or other relief in respect any Subsidiary or its debts, or of a substantial part of its assets, under any Federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Subsidiary or for a substantial part of its assets, and, in any such case, such proceeding or petition shall continue undismissed for 60 days or an order or decree approving or ordering any of the foregoing shall be entered.

(h)     any Subsidiary shall (i) voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any Federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in Section 10.01(g) of the DIP Agreement, (iii) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Subsidiary or for a substantial part

of its assets, (iv) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors or (vi) take any action for the purpose of effecting any of the foregoing.

(i)  one or more judgments for the payment of money in an aggregate amount in excess of $50,000 (to the extent not covered by independent third party insurance provided by insurers of the highest claims paying rating or financial strength as to which the insurer does not dispute coverage and is not subject to an insolvency proceeding) shall be rendered against the Borrower, any Subsidiary or any combination thereof and the same shall remain undischarged for a period of 60 consecutive days during which execution shall not be effectively stayed, or any action shall be legally taken by a judgment creditor to attach or levy upon any assets of the Borrower or any Subsidiary to enforce any such judgment.

(j)  the Loan Documents after delivery thereof shall for any reason, except to the extent permitted by the terms thereof, cease to be in full force and effect and valid, binding and enforceable in accordance with their terms against the Borrower or shall be repudiated, or cease to create a valid and perfected Lien of the priority required thereby on any of the collateral purported to be covered thereby, except to the extent permitted by the terms of the DIP Agreement, or the Borrower or any Subsidiary or any of their Affiliates shall so state in writing.

(k)  an ERISA Event shall have occurred that, in the opinion of the Required Lenders, when taken together with all other ERISA Events that have occurred, could reasonably be expected to result in a Material Adverse Effect.

(l)  a Change in Control shall occur.

(m)

(i)  the Case concerning the Borrower shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or Borrower shall file a motion or other pleading or support a motion or other pleading filed by any other Person seeking the dismissal or conversion of the Case under Bankruptcy Code section 1112 or otherwise; a trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Bankruptcy Code section 1106(a)(3) and (4)) under Bankruptcy Code section 1106(b) shall be appointed in the Case; or any Loan Party shall file a motion or other pleading or shall consent to a motion or other pleading filed by any other Person seeking any of the foregoing; or

(ii)  the existence of any other Superpriority Claim (other than the Carve-Out, the Liens granted pursuant to the 9019 Order and the superpriority administrative claim granted pursuant to the 9019 Order) in the Case which is *pari passu* with or senior to the claims of the Administrative Agent and the other Secured Parties against any Loan Party hereunder, or there shall arise or be granted any

16

such *pari passu* or senior Superpriority Claim (other than the Carve-Out); or

(iii)     the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under Bankruptcy Code section 362 to the holder or holders of any security interest to proceed against, including foreclosure (or the granting of a deed in lieu of foreclosure or the like) on, any assets of any of the Borrowers or the Guarantors that have a value in excess of $50,000 in the aggregate; provided, however, this clause (iii) shall not apply to any relief granted by the Bankruptcy Court as part of any approved plan for the plugging and abandonment of wells and decommissioning oil and gas platforms in form and substance satisfactory to the Required Lenders in their sole discretion; or

(iv)     an order of the Bankruptcy Court (or any other court of competent jurisdiction) shall be entered (A) reversing, staying for a period in excess of 10 days or vacating either of the DIP Orders, (B) without the written consent of the Required Lenders, amending, supplementing or modifying either of the DIP Orders or (C) denying or terminating the use of cash collateral by the Borrower or the Guarantors pursuant to either of the DIP Orders; or any Loan Party shall file a motion or other pleading or shall consent to a motion or other pleading filed by any other Person seeking any of the foregoing; or

(v)      default in any material respect shall be made by Borrower or any Guarantor in the due observance or performance of any term or condition contained in the DIP Orders; or

(vi)     a final non-appealable order of the Bankruptcy Court shall be entered that provides for the recovery from any portions of the Collateral of any costs or expenses of preserving or disposing of such Collateral under Bankruptcy Code section 506(c); or any Loan Party shall bring a motion in the Case seeking, or otherwise consent to, authority from the Bankruptcy Court (i) to recover from any portions of the Collateral any costs or expenses of preserving or disposing of such Collateral under Bankruptcy Code section 506(c) or (ii) to effect any other action or actions (x) materially adverse to the Administrative Agent or Lenders or their rights and remedies hereunder or their interest in the Mortgaged Property or (y) inconsistent with the Loan Documents; or

(vii)    the entry of the Final Order shall not have occurred on or prior to January 10, 2016; or

(viii)   the Bankruptcy Court shall terminate or reduce the period pursuant to Bankruptcy Code section 1121 during which the Loan Parties have the exclusive right to file Reorganization Plan and solicit acceptances thereof; or

(ix)     filing of any motion or proceeding which could have material impairment of the Lenders' rights under the Loan Documents; or

(x)    the Loan Parties, or any Person claiming by or through the Loan Parties, shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the Administrative Agent or any of the Lenders relating to the Loans or any Loan Document, unless (i) such suit or other proceeding is in connection with the enforcement of the Loan Documents against the Administrative Agent or Lenders or (ii) such suit or other proceeding is stayed pursuant to Bankruptcy Code section 362 or an order of the Bankruptcy Court and is released upon the "Effective Date" of a Reorganization Plan, as defined therein, and the order confirming such Reorganization Plan provides that any such suit or proceeding shall be dismissed with prejudice; or

(xi)    a Reorganization Plan that is not in form and substance satisfactory to the Required Lenders shall be confirmed in the Case, or any order shall be entered which dismisses the Case and which order does not provide for the payment in full in cash of the Obligations under the Loan Documents or the Debtor shall seek confirmation of any such plan of reorganization or entry of any such order; or

(xii)    after the order confirming a Reorganization Plan (the "Confirmation Order") shall have been entered by the Bankruptcy Court, any Loan Party shall fail to satisfy in full all Obligations under the Loan Documents on or after the effective date of such plan of reorganization or fail to comply in any material respect with the Confirmation Order, or the Confirmation Order shall have been revoked, remanded, vacated, reversed, rescinded or modified or amended in any manner that is materially adverse to the Administrative Agent's or the Lenders' interests or inconsistent with the Loan Documents; or

(xiii)    the commencement of any adversary proceeding, contested matter or other action by any Loan Party or any other party either asserting any claims and defenses or otherwise against any of the holders of the Senior Notes (other than Platinum) with respect to the obligations of any Loan Party thereunder or the liens granted to such agent to secure the obligations under the Indenture or Senior Notes, except as may be permitted under the Interim Order or Final Order.

(n)    the Borrower's financial advisor as of the Effective Date is no longer serving as the chief restructuring officer of the Borrower and the Borrower fails to retain a replacement chief restructuring officer satisfactory to the Lenders in their sole discretion within 20 days.

15.    *Remedies After an Event of Default*.

(a)    The automatic stay under Bankruptcy Code section 362 is vacated and modified to the extent necessary to permit the DIP Agent and the Lenders to exercise all rights and remedies under the DIP Documents.

(b)     In the case of an Event of Default other than one described in Section 10.01(g), Section 10.01(h) or Section 10.01(i) of the DIP Agreement, at any time thereafter during the continuance of such Event of Default, the Administrative Agent may, and at the request of the Required Lenders shall, by notice to the Borrower, take either or both of the following actions, at the same or different times: (i) terminate the Commitments, and thereupon the Commitments shall terminate immediately, and (ii) declare the Loans then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable), and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrower accrued hereunder and under the Loan Documents, shall become due and payable immediately, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, all of which are hereby waived by the Borrower and each Guarantor; and in case of an Event of Default described in Section 10.01(g), Section 10.01(h) or Section 10.01(i) of the DIP Agreement, the Commitments shall automatically terminate and the Notes and the principal of the Loans then outstanding, together with accrued interest thereon and all fees and the other obligations of the Borrower accrued hereunder and under the Loan Documents, shall automatically become due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower.

(c)     In the case of the occurrence of an Event of Default, the Administrative Agent and the Lenders will have all other rights and remedies available at law and equity.

(d)     All proceeds realized from the liquidation or other disposition of collateral or otherwise received after maturity of the Loans, whether by acceleration or otherwise, shall be applied: first, to reimbursement of expenses and indemnities provided for in the DIP Agreement and the Security Instruments; second, to accrued interest on the Loans; third, to fees; fourth, pro rata to principal outstanding on the Loans and Obligations referred to in Clause (b) of the definition of Obligations owing to a Lender or an Affiliate of a Lender; fifth, to any other Obligations; and any excess shall be paid to the Borrower or as otherwise required by any Governmental Requirement.

(e)     Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtor or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral or to obtain any other injunctive relief.  In no event shall the DIP Agent, the Lenders, the Indenture Trustee or the holders of Senior Notes be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Pre-petition Collateral, including Cash Collateral. The DIP Agent's or any Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Interim Order shall not constitute a waiver of the DIP Agent's or any Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

19

16.   *Application of Collateral Proceeds.*  To the extent required by this Interim Order and the DIP Documents, the Debtor is hereby authorized and directed to remit to the DIP Agent, for the benefit of the Lenders, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral including but not limited to, the proceeds of Avoidance Actions, all accounts receivable collections, proceeds of sales of inventory, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Conversion Date come into the possession or control of the Debtor, or to which the Debtor shall become entitled at any time, and the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the DIP Agent and the Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral subject to and in accordance with this Interim Order and the DIP Documents to the DIP Obligations in accordance with the provisions of the DIP Documents (including the Carve-Out). After all DIP Obligations shall have indefeasibly been paid in full in cash, the Debtor is hereby authorized and directed to remit to the Indenture Trustee, for the benefit of holders of Senior Notes, one hundred percent (100%) of all collections on, and proceeds of, the Pre-petition Collateral and the proceeds of the Avoidance Actions including but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Conversion Date come into the possession or control of the Debtor, or to which the Debtor shall become entitled at any time, and the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Indenture Trustee and the holders of Senior Notes to retain and apply all collections, remittances, and proceeds of the Pre-petition Collateral and the Avoidance Actions subject to and in accordance with this

Interim Order and the Indenture to the Pre-petition Obligations in accordance with the provisions of the Indenture (including the Carve-Out). Until all DIP Obligations have been paid in full in cash and all Commitments have been terminated, the Indenture Trustee and the holders of Senior Notes shall turn over any and all proceeds of DIP Collateral, Pre-petition Collateral or amounts otherwise received on account the DIP Collateral or the Pre-petition Collateral to the DIP Agent (for the benefit of the Lenders).

17. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of itself and the Lenders or (except as provided in paragraph 23 of this Interim Order) to the Indenture Trustee on behalf of itself and the holders of Senior Notes pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

18. *The Cash Collateral.* Substantially all of the Debtor's cash, constitute proceeds of the Pre-petition Collateral and, therefore, are Cash Collateral of the holders of Senior Notes.

19. *Adequate Protection for the Indenture Trustee and Holders of Senior Notes.* The Indenture Trustee and the holders of Senior Notes are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), 363(e) and 364(d)(1), to adequate protection of their interests in the Pre-petition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Pre-petition Collateral, including without limitation, any such diminution on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtor's use of Cash Collateral and other Pre-petition Collateral and (iv) the imposition of the automatic stay, pursuant to Bankruptcy Code section 362 (such diminution in value, the "Adequate Protection Obligations"). As adequate protection, the Indenture Trustee and the Lenders are hereby granted the following:

(a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Indenture Trustee (for itself and for the benefit of holders of Senior Notes) is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out, (iii) the Non-Primed Liens, and (iv) the lien granted pursuant to the 9019 Order.

(b)    Section 507(b) Claims.   The Adequate Protection Obligations shall constitute superpriority claims as provided in Bankruptcy Code section 507(b) (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Bankruptcy Code sections 326, 328, 330, 331 and 726, subject and subordinate only to (i) the Carve-Out, (ii) the lien granted pursuant to the 9019 Order, and (iii) the Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Interim Order, the Indenture Trustee and holders of Senior Notes shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

(c)    Interest, Fees and Expenses.  The Debtor is authorized and directed to immediately pay in cash, as adequate protection to the Indenture Trustee all reasonable and documented fees and expenses incurred under the Indenture within ten (10) days following receipt of invoices therefor by the Debtor.[4]

(d)    Sale Proceeds Limitations.  The Debtor shall not sell, lease, transfer or otherwise dispose of its interest in the Pre-petition Collateral or the DIP Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the DIP Agent and the Lenders.  In the event of any sale, lease, transfer, license, or other disposition of property of the Debtor that constitutes Pre-petition Collateral or DIP Collateral outside the ordinary course of business (to the extent permitted by this Interim Order), the Debtor is authorized and directed, without further notice or order of this Court, to promptly pay 100% of the net proceeds (including cash or other forms of consideration) resulting therefrom to the DIP Agent for the benefit of the Lenders or the Indenture Trustee for the benefit of the holders of Senior Notes in accordance with section 9.11 of the DIP Agreement.  Except to the extent expressly set forth in this Interim Order, the Indenture Trustee and the holders of Senior Notes shall not receive or retain any payments, property or other amounts pursuant to this paragraph 19(d) unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

---

[4] For the avoidance of doubt, this provision shall not allow Platinum to recover fees and expenses.

(e)     <u>Information and Other Covenants.</u>   The Debtor shall comply with the reporting requirements set forth in the DIP Agreement, including those set forth in Section 8.01 and 8.02 of the DIP Agreement, together with such additional information as the Lenders may reasonably request from time to time.   The Debtor shall maintain its cash management arrangements in a manner consistent with its currently established practices, including continuing to maintain, service, and administer its bank accounts in the ordinary course.   The Debtor shall provide at least seven (7) days' notice to the Lenders before opening or closing any existing bank or other account held at any financial institution.

(f)     <u>Credit Bidding.</u>   As additional adequate protection, the holders of Senior Notes shall, subject to the terms of the Indenture, have the right to "credit bid" the amount of the Pre-petition Obligations in connection with any sale of the Pre-petition Collateral, including without limitation, any sale pursuant to Bankruptcy Code section 363 or included as part of any reorganization plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii) without the need for further order authorizing the same.

20.     *Holders of Senior Notes' Reservation of Rights*.   A majority of the non-insider holders of Senior Notes consent to the adequate protection provided herein.   Notwithstanding any other provision hereof, the grant of adequate protection to the Indenture Trustee and the holders of Senior Notes pursuant hereto is without prejudice to the right of the Indenture Trustee, with the consent of a majority of the non-insider holders of Senior Notes, to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and the rights of the Debtor and other parties in interest to object thereto.   Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, authorization to use Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Indenture Trustee or any holder of Senior Notes.   The consent of the Indenture Trustee and the majority of the non-insider holders of Senior Notes to the priming of the Pre-petition Liens by the DIP Liens and the Carve-Out (a) is limited to the DIP Loans and the Carve-Out and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Indenture Trustee or the holders of Senior Notes that,

absent such consent, their interests in the Pre-petition Collateral would be adequately protected pursuant to this Interim Order.

21.     *Perfection of the DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent and the Indenture Trustee are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action to validate and perfect the DIP Liens and the Adequate Protection Liens granted to them under this Interim Order (with respect to the DIP Liens and Adequate Protection Liens) and with Interim Order (with respect to the Adequate Protection Liens).  Whether or not the DIP Agent or the Indenture Trustee shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, such DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order (with respect to the DIP Liens and Adequate Protection Liens) and with Interim Order (with respect to the Adequate Protection Liens).

(b)     A certified copy of the Interim Order or this Interim Order may, in the discretion of the DIP Agent and the Indenture Trustee, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Interim Order for filing and recording.

(c)     The Debtor shall execute and deliver to the DIP Agent and the Indenture Trustee, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Indenture Trustee, as the case may be, may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any such provision shall have no force and effect with respect to the granting of the DIP Liens or the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Lenders or the holders of Senior Notes in accordance with the terms of the DIP Documents or this Interim Order.

22.     *Preservation of Rights Granted Under the Interim Order.*

(a)     No claim or lien (other than the DIP Liens or the lien granted pursuant to the 9019 Order) having a priority senior to or *pari passu* with those granted by this Interim Order to the DIP Agent or the Indenture Trustee shall be granted or allowed while any portion of the DIP Obligations, the Pre-petition Obligations and the DIP Liens and the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code section 551 or subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

(b)     Unless all DIP Obligations, Pre-petition Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, in the case of clause (i) below, the Debtor shall not seek, and in the case clauses (i) and (ii) below, it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use the Cash Collateral if the Debtor seeks, or if there is entered, (i) any modification of this Interim Order without the prior written consent of the DIP Agent and the Indenture Trustee, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Indenture Trustee, or (ii) an order converting or dismissing the Case.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, to the extent provided in Bankruptcy Code sections 363(m) and 364(e), not affect (i) the validity, priority or enforceability of any DIP Obligations, Pre-petition Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtor to the DIP Agent, the Lenders, the Indenture Trustee and the holders of Senior Notes, as the case may be, prior to the effective date of such reversal, stay, modification or vacatur shall, to the extent provided in Bankruptcy Code sections 363(m) and 364(e), be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the Lenders, the Indenture Trustee and the holders of Senior Notes shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e), this Interim Order, the DIP Documents, the Indenture, the Adequate Protection Obligations and uses of the Cash Collateral.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the Lenders, the Indenture Trustee and the holders of Senior Notes granted by this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Case to a case under chapter 7 of the

Bankruptcy Code, dismissing the Case, or (ii) the entry of an order confirming a plan of reorganization in the Case and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtor has waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Case, in any successor case(s), or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Adequate Protection Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the DIP Agent, the Lenders, the Indenture Trustee and the Lenders granted by this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash and all Adequate Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied in accordance with paragraph 19(b).

23.     *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained in this Interim Order, including without limitation, in paragraphs 4 and 18 of this Interim Order, shall be binding upon the Debtor under all circumstances.  The stipulations and admissions contained in this Interim Order, including without limitation, in paragraphs 4 and 18 of this Interim Order, shall be binding upon all parties in interest, including, without limitation, the Committee and Platinum, under all circumstances and for all purposes, except solely to the extent as provided in this Interim Order unless (a) any party-in-interest (including the Committee) with standing to do so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in this paragraph 23) no later than 45 days following entry of this Interim Order, subject to extension by further order of the Court; provided that any such deadline is subject to extension as (x) agreed in writing by the Indenture Trustee, the Lenders and the Committee, (y) may be specified by this Court for cause shown, (i) challenging the validity, enforceability, priority or extent of the Pre-petition Obligations or the Pre-petition Liens or (ii) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") in any way related to the Debtor against any of the

26

Indenture Trustee, entities holding the Senior Notes, the Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors (which, for the avoidance of doubt, shall not include Platinum) and (b) an order is entered and becomes final in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; provided that, as to the Debtor, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Conversion Date.  If no such adversary proceeding or contested matter is timely filed in respect of the Pre-petition Obligations or the Pre-petition Liens (x) the Pre-petition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Case and any subsequent chapter 7 case, (y) the Pre-petition Liens shall be deemed to have been, as of the Conversion Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 4(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Pre-petition Obligations, the Indenture Trustee, Senior Notes and the Lenders (other than Platinum), as the case may be, and the Pre-petition Liens shall not be subject to any other or further challenge by any party-in-interest (including Platinum, the Committee, and any estate representative or a chapter 7 or 11 trustee appointed or elected for the Debtor).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 4 and 18 of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all parties-in-interest (including Platinum and the Committee), except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Notwithstanding anything to the contrary in this paragraph 23, if the Case is converted to a case under chapter 7 of the Bankruptcy Code prior to [DATE], the chapter 7 trustee may,

within 60 days from the date of his or her appointment, and subject to the terms of this paragraph 23, challenge the Pre-petition Obligations and the Pre-petition Liens or assert or prosecute Claims or Defenses as if such chapter 7 trustee were the Committee.

24.     *Limitation on Use of the DIP Loans, the DIP Collateral, Cash Collateral and Pre-petition Collateral*.  The Debtor shall use the DIP Loans and the Pre-petition Collateral, including the Cash Collateral, and any unrestricted cash and cash equivalents, solely as provided in this Interim Order, the DIP Budget and the DIP Documents.  Notwithstanding anything herein or in any other order of this Court to the contrary, neither the DIP Loans, the DIP Collateral, the Pre-petition Collateral, including the Cash Collateral, the Carve-Out nor any unrestricted cash or cash equivalents may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Indenture or the liens or claims granted under this Interim Order, the DIP Documents or Indenture, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the Lenders, the Indenture Trustee, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Indenture Trustee's assertion, enforcement or realization on the Pre-petition Collateral or the DIP Collateral in accordance with the DIP Documents, the Indenture or this Interim Order, (d) seek to modify any of the rights granted to the DIP Agent, the Lenders, the Indenture Trustee or the holders of Senior Notes hereunder or under the DIP Documents or the Indenture, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Conversion Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents and the DIP Budget; <u>provided</u> that, notwithstanding

28

anything to the contrary herein, no more than an aggregate of $50,000 of the Pre-petition Collateral, including the Cash Collateral, the DIP Loans, the DIP Collateral or the Carve-Out may be used by the Committee to investigate the validity, enforceability or priority of the Pre-petition Obligations or the Pre-petition Liens, or investigate any Claims and Defenses or other causes action against the Indenture Trustee and the Lenders.

25.     *Insurance*.  To the extent the Indenture Trustee is listed as loss payee under the Debtor's insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtor's insurance policies and shall act in that capacity and subject to the terms of the DIP Documents, distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the Pre-petition Obligations.

26.     *Proofs of Claim*.  Neither the Indenture Trustee nor the DIP Agent will be required to file proofs of claim in the Case or any or successor case(s), and the Debtor's stipulations and admissions in paragraphs 4 and 18 herein shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the Case or successor case(s) shall not apply to the Indenture Trustee of the holders of Senior Notes with respect to the Prepetition Obligations. Notwithstanding the foregoing, the Indenture Trustee, on behalf of itself and the holders of Senior Notes, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Case for any claim allowed herein. Any proof of claim filed by the Indenture Trustee shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the holders of Senior Notes.

27.     *Order Governs.*   This Interim Order supersedes the *Order Authorizing Use of Cash Collateral and Mandating Release of Funds and Providing Adequate Protection* [Docket No. 164], the *Order Authorizing Continued Use of Cash Collateral* [Docket No. 229], the *Order Authorizing Continued Use of Cash Collateral* [Docket No. 272], the *Order Authorizing Continued Use of Cash Collateral* [Docket No. 319], the *Order Authorizing Continued Use of Cash Collateral* [Docket No. 367], and the *Order Authorizing Continued Use of Cash Collateral* [Docket No. 395] in their entirety.  In the event of any inconsistency between the provisions of this Interim Order, the Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

28.     *Final Hearing.*   The Final Hearing to consider approving the relief sought in the Motion on a final basis shall be held on [DATE], 2016 at [TIME] (CT) before the Honorable Marvin Isgur, at the United States Bankruptcy Court for the Southern District of Texas, Courtroom 404, 515 Rusk, Houston, TX 77002.  The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2), and the Local Rules, and was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief granted at the Final Hearing is required.

29.     *Binding Effect; Successors and Assigns.*   The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in the Case, including without limitation, the DIP Agent, the Lenders, the Indenture Trustee, the holders of Senior Notes and the Debtor and each of their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor, an examiner with expanded powers appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of

30

the estate of the Debtor) and shall inure to the benefit of the DIP Agent, the Lenders, the Indenture Trustee, and the Debtor and their respective successors and assigns; provided that, except to the extent expressly set forth in this Interim Order, the DIP Agent, the Indenture Trustee, the Lenders and the holders of Senior Notes shall have no obligation to permit the use of the DIP Loans or the Cash Collateral, as applicable, or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

30.   *Limitation of Liability*.  The Lenders and the Indenture Trustee shall not (i) have liability to any third party nor shall the Lenders and the Indenture Trustee be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), or owe any fiduciary duty to the Debtor, its creditors or its bankruptcy estates, and (ii) the Lenders' and the Indenture Trustee's relationship with the Debtor shall not constitute nor be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Interim Order, the DIP Documents or the Indenture shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the Lenders, the Indenture Trustee or the holders of Senior Notes of any liability for any claims arising from the pre-petition or post-petition activities of the Debtor.

31.   *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim Order.

Dated: _____

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE