ENTERED
07/14/2016

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-34287 (MI) |
| | § | |
| | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **(Chapter 11)** |
| **OPERATIONS, LLC** | § | |
| | § | |
| **Debtor** | § | |
| | § | |

**ORDER CONFIRMING *THIRD AMENDED PLAN***
***OF LIQUIDATION OF BLACK ELK ENERGY OFFSHORE***
***OPERATIONS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE***

On June 27, 2016, the Bankruptcy Court[1] held the Confirmation Hearing ("Confirmation Hearing") to consider confirmation of the *Third Amended Plan of Liquidation of Black Elk Energy Offshore Operations, LLC Under Chapter 11 of the Bankruptcy Code,* attached hereto as Exhibit "A" (as supplemented, amended, or modified, the "Plan"), filed by the Debtor.

On April 12, 2016, the Debtor filed its Disclosure Statement and its Plan of Liquidation [Docket Nos. 766, 767]. On May 3, 2016, the Debtor filed its Second Amended Plan of Liquidation and Second Amended Disclosure Statement [Docket Nos. 828, 829].

On May 4, 2016, the Bankruptcy Court entered its *Order (I) Approving Disclosure Statement and the Form and Manner of Service Related Thereto; (II) Setting Dates for the Objection Deadline and Hearing Related to Confirmation of the Plan; and (III) Authorizing Related Relief* [Docket No. 835] (the "Disclosure Statement Order"). Among other things, the Disclosure Statement Order approved, on a final basis, the Debtor's Second Amended Disclosure Statement.

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan.

On June 3, 2016, the Debtor filed its *Plan Supplement for Debtor's Second Amended Plan of Liquidation* [Docket No. 973] (as supplemented, amended, or modified, the "Plan Supplement"), which included, among other things, a form of Liquidating Trust Agreement and a form of Litigation Trust Agreement (as the same may be respectively modified, supplemented or amended from time to time, the "Liquidating Trust Agreement" and the "Litigation Trust Agreement") (collectively, the "Trust Agreements").

On June 20, 2016, the Debtor filed its *Third Amended Plan of Liquidation of Black Elk Energy Offshore Operations, LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 1092], and certain documents amending and supplementing the Plan Supplement (*See Notice of Filing Additional Amended Plan Documents* [Docket No. 1092]).

In support of Confirmation of the Plan, the Debtor filed, among other things, the *Amended Declaration of Notice, Balloting and Claims Agent* [Docket No. 1141] (the "BMC Declaration" of the "Balloting Agent").

At the Confirmation Hearing, the Debtor negotiated and finalized multiple stipulations with parties asserting administrative claims and objections to the Plan ("Plan Stipulations"). The terms of the Plan Stipulations were announced on the record in open court at the Confirmation Hearing. Each of the Plan Stipulations are attached to this Confirmation Order as Composite Exhibit "C."

The Debtor announced modifications to the Plan in open court at the Confirmation Hearing related to the asserted priority tax claims of the Louisiana Department of Revenue ("LDR"). In accordance with the modifications announced, the Debtor and LDR agreed that LDR would be entitled to payment on the Effective Date of $56,568.49 for outstanding severance taxes, including 100% those asserted as a priority claim in Claim No. 93-2 and a

portion of those asserted as unsecured priority on Claim 90-1. The Debtor has agreed to reserve the amount of $15,895.29 for outstanding severance taxes allegedly owed since the Petition Date [Claim No. 92-2], with the payment of post-petition severance taxes being subject to reconciliation following the Debtor's filing severance returns for all periods since the Petition Date which will be filed no later than ninety days (90) following the Effective Date of the Plan. The remaining balance of Claim No. 90-1 and 93-2 as well as the entirety of Claim 91-1 shall be treated and paid as Allowed General Unsecured Claims. The Debtor fully and finally releases any and all claims and causes of action against LDR, whether known or unknown and whether forseen or unforeseen. However, for the sake of clarity, no such claim or cause of action shall survive confirmation of the plan to be transferred to either trust established by the Plan, provided the rights of the parties are reserved as to Claim 92-2 [and any amendment thereof once returns are filed with LDR]. Finally, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the LDR shall retain all rights to immediately collect from any third parties who are or may be found liable under Louisiana law for the trust taxes, specifically including sales taxes and withholding taxes, to the same extent they would be liable if this bankruptcy case had not been filed.

Based upon the Bankruptcy Court's review of, among other things, (i) the Plan, (ii) the Plan Supplement, including the Liquidating Trust Agreement and Litigation Trust Agreement, (iii) the BMC Declaration, (iv) objections to Confirmation of the Plan, the Debtor's responses to the same, and settlements announced on the record at the Confirmation Hearing in connection with same, and the resulting Plan Stipulations (v) exhibits admitted and other evidence presented or proffered at the Confirmation Hearing, (vi) representations and arguments of counsel at the Confirmation Hearing, (vii) the docket of the Bankruptcy Case, and (viii) other relevant factors

affecting these Bankruptcy Case, the Bankruptcy Court makes the following findings of fact and conclusions of law, and issues this Confirmation Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

A.    <u>Jurisdiction; Venue; Core Proceeding</u>. The Bankruptcy Court has jurisdiction over this Case pursuant to 28 U.S.C. § 1334. Venue in the Bankruptcy Court is proper under 28 U.S.C. § 1408. The Debtor is and was qualified to be a debtor under Bankruptcy Code §109. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Notice, Solicitation and Acceptance

B.    <u>Service of Solicitation Materials and Notices</u>.   As evidenced by certificates of service filed on the docket of this Case, all appropriate pleadings, notices, and Ballots were transmitted, mailed, and served to the extent required by the Disclosure Statement Order and Bankruptcy Rule 3017(d). The Balloting Agent mailed, by first class mail, either in paper form or on a compact disc: (a) a copy of the Disclosure Statement Order; (b) a copy of the Disclosure Statement; (c) a copy of the Plan; (d) a Notice of Confirmation Hearing; and (e) an appropriate Ballot Notice in the form as approved by the Disclosure Statement Order (the "<u>Solicitation Package</u>") to (i) Holders of Claims in Classes 2, 3, 4, 5, and 6; and (ii) the appropriate nominee for Holders of Senior Secured Notes. The Court specifically finds that the modifications made to the solicitation version of the Second Amended Plan [Doc. No. 842-7] by the Third Amended Plan [Doc. No. 1092], and the additional modifications to the Third Amended Plan

announced at the Confirmation Hearing, are proper under Fed. R. Bankr. P. 3019(a), and thus those modifications were not required to be re-solicited, and the Plan shall be deemed accepted by all creditors and equity security holders who previously accepted Second Amended Plan [Doc. No. 842-7] or any version of the Plan thereafter.

C.     Adequate Notice of Confirmation Hearing. In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, and the Disclosure Statement Order, adequate notice of the time for filing objections to Confirmation of the Plan and the authorizations and transfers contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holders of Claims and Equity Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Confirmation Hearing or Confirmation of the Plan is necessary or required.

D.     Good Faith Solicitation (11 U.S.C. §1125(e)). Based on the record, the Debtor, and its respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals (including but not limited to their attorneys, financial advisors accountants, solicitation agents, and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code §1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Rules, the Disclosure Statement Order and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) the solicitation of acceptances or rejections of the Plan, (2) the offer, sale, issuance and distribution of the Liquidating Trust Interests and Litigation Trust Interests under the Plan, and (3) their participation in the other activities described in Bankruptcy Code § 1125. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with

Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. In addition, all procedures used to distribute the Solicitation Package to holders of Claims and Equity Interests were fair, and conducted in accordance with the Bankruptcy Code, the Rules, the Local Rules, and all other applicable rules, laws and regulations. Therefore, the Debtor and its respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals are entitled to the full protections afforded by Bankruptcy Code § 1 125(e).

### **Compliance with Bankruptcy Code § 1129**

E.      <u>The Debtor has satisfied its burden of proof.</u>   A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence.[2] Here, the Debtor has satisfied its burden of proof with respect to Confirmation of the Plan.

F.      <u>Plan Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(1)).</u> The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code §1129(a)(l). Congress enacted Bankruptcy Code §1129(a)(1) to ensure that a plan complies with the Bankruptcy Code's provisions regarding classification of claims and interests (11 U.S.C. §1122) and the contents of a plan of reorganization (11 U.S.C. §1123).[3] These provisions are discussed in the following paragraphs.

G.      <u>Plan Compliance with Bankruptcy Code §1122.</u>   The Plan complies with the classification requirements of the Bankruptcy Code. Classification of claims and interests is

---

[2] *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").

[3] *See* S. REP. NO. 95-989, at 126 (1971), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. REP. NO. 95-595, at 412(1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also Kane v. Johns-Manville Corp.,* 843 F.2d 636, 648 (2d Cir. 1988).

609332421.1

governed by Bankruptcy Code §1122, which provides that "a new plan may place a Claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). This section does not require that claims or interests within a particular class be identical.[4] A plan proponent has flexibility in classifying claims, so long as the proponent has some reasonable basis for the classification or the creditor agrees to it.[5]

      H.      Under the Plan, the Claims or Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within that Class. The Plan classifies Claims and Equity Interests as follows:

| Class | Designation | Status | Voting |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to accept |
| 2 | Noteholder DIP Secured Claim | Impaired | Entitled to vote |
| 3 | Argonaut DIP Secured Claims | Impaired | Entitled to vote |
| 4 | Senior Note Claims | Impaired | Entitled to vote |
| 5 | Other Secured Claims | Impaired | Entitled to vote |
| 6 | General Unsecured Claims | Impaired | Entitled to vote |
| 7 | Interests in the Debtor | Impaired | No (deemed to reject) |

      I.      Valid business, legal, and factual reasons exist for the separate classification of each of these Classes of Claims and Equity Interests, and there is no unfair

---

[4] *In re DRW Property Co.,* 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); *see also Phoenix Mut. Life Ins. Co. v. Greystone Ill Joint Venture (In re Greystone 111 Joint Venture),* 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

[5] *See In re Jersey City Med. Center,* 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case."). *A* plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support separate classification. *In re Briscoe Enterprises.,* 994 F.2d at 1167 (quotations omitted); *see also In re The Heritage Org., L.L.C.,* 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

discrimination or gerrymandering between or among the holders of Claims and Equity Interests. A reasonable justification also exists for the classification of Allowed Other Secured Claims differently from First Lien Senior Secured Notes Claims.

J.      In sum, all Claims and Equity Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of Bankruptcy Code § 1122.

K.      The Plan Complies with Bankruptcy Code §1123. In accordance with Bankruptcy Code § 1123(a), the Plan: (1) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), 507(a)(8); (2) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (3) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of their respective Claim or Equity Interest; (5) provides for adequate means for the Plan's implementation; (6) is a liquidating plan and accordingly (a) provides for the cancelation, termination, and extinguishment of the Equity Interests in BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, (b) does not provide that any holder of Claims, any holder of Equity Interests, or any other Person will receive equity or other interests in BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, (c) does not provide for either the Debtor, the Liquidating Trust, or the Litigation Trust to issue securities other than the Liquidating Trust Interests and the Litigation Trust Interests (neither of which are equity securities) to any Person, and (d) provides for the termination of all of the directors, officers, and/or

609332421.1

managers of any of the Debtor; and (7) contains only provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and Liquidating Trust Committee members on and after the Effective Date. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estate.  Therefore, the Plan satisfies the requirements of Bankruptcy Code §1123(a) and (b).

L.      <u>Debtor's Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(2))</u>. In accordance with Bankruptcy Code § 1129(a)(2), the Debtor has complied with the applicable provisions of the Bankruptcy Code.   The Debtor is a proper debtor under Bankruptcy Code § 109. The Debtor has complied with the applicable provisions of the Bankruptcy Code (including §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

M.      Votes to accept or reject the Plan were solicited by the Debtor and its respective members, partners, representatives, officers, directors, employees, advisors, attorneys and agents after the Court approved the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).

N.      The Debtor and its  respective members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, in good faith within the meaning of Bankruptcy Code § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the

Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Article VIII of the Plan.

      O.     The Debtor and its respective members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan, so long as such Distributions are made consistent with and pursuant to the Plan.

      P.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). A plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[6] "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan . . . ."[7]

      Q.     The Plan is proposed in good faith and not by any means forbidden by law. The Debtor converted this reorganization case with the legitimate and honest purpose of developing an orderly process to compensate legitimate claimants while maximizing value. The Plan culminates a reorganization process during which the Debtor has consistently engaged in arm's-

---

[6] *In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 802; *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-425 (7th Cir. 1984).
[7] *Brite* v. *Sun Country Dev. (In re Sun Country Dev.)*, 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.*, 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003).

length negotiations among entities having very different and, in many instances, competing interests, all aimed at an over-arching goal of maximizing the value of the Debtor and the recovery to holders of Claims and Equity Interests in accordance with the Bankruptcy Code. In accordance with Bankruptcy Code § 1129(a)(3), the Debtor has proposed the Plan in good faith and not by any means forbidden by law. The treatment of holders of Claims and Equity Interests contemplated by the Plan was negotiated and consummated at arm's-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan. Furthermore, the Plan represents extensive arms-length negotiations among the Debtor and other parties in interest, as well as their respective legal and financial advisors, and reflects the best interests of the Debtor's Estate and holders of Claims and Equity Interests.

R.      Payment for Services or Costs and Expenses (11 U.S.C. §1129(a)(4)).   In accordance with Bankruptcy Code § 1129(a)(4), all payments and distributions, made or to be made by the Debtor, the Liquidating Trustee or the Litigation Trustee for services or for costs and expenses in, or in connection with, this Case, or in connection with the Plan and incident to this Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court.

S.      Directors, Officers, and Insiders (11 U.S.C. §1129(a)(5)).   The Debtor has complied with Bankruptcy Code §1129(a)(5). The Persons that must be identified pursuant to Bankruptcy Code §1129(a)(5) have been identified. These provisions of the Plan are consistent with the interests of Claim and Equity Interest holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

T.     No Rate Changes (11 U.S.C. § 1129(a)(6)). In accordance with Bankruptcy Code § 1129(a)(6), the Debtor is not subject to any governmental regulation of any rates.

U.     Best Interests of Creditors (1129(a)(7)). Bankruptcy Code §1129(a)(7), the "best interests of creditors test," requires that, with respect to each impaired class, each holder of a claim or interest in the class:

      i.     has accepted the plan; or

      ii.    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

V.     The testimony presented by the Debtor's financial adviser, Mr. Lance Gurley of Blackhill Partners LLC, in connection with the Confirmation Hearing, and other evidence admitted at the Confirmation Hearing, establish that the requirements of Bankruptcy Code § 1129(a)(7) are satisfied by the Plan.  In accordance with Bankruptcy Code § 1129(a)(7), with respect to Classes of Impaired Claims or Impaired Equity Interests, each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

W.     Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 is not Impaired and thus is deemed to have accepted the Plan.  Classes 2, 3, 4, 5, and 6 are Impaired.  In accordance with various modifications announced in open court, including the Debtor's agreements reached in the Plan Stipulations, various creditors including McMoRan Oil and Gas, LLC, Merit Energy Company, Marubeni Oil & Gas (USA), Inc., Northstar Offshore,

Peregrine Oil & Gas, LP, W&T Offshore, Inc., and Platinum Partners changed their respective negative votes to votes in favor of the Plan.  As a result, and as demonstrated by the BMC Declaration Classes 2, 3, 4, 5, and 6 have accepted the Plan in accordance with Bankruptcy Code § 1126(c).  The Class 7 Interests are being extinguished and are deemed to reject the Plan.  Based on modifications made in open court at the Confirmation Hearing, the Debtor is adding Class 8 which consists of the allowed secured claim of Harris County, Texas.  The modifications to the Plan provide that Harris County shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Tax Claim in Class 8, each such Holder shall receive on the later of the Effective Date or thirty (30) days following the date on which such Secured Tax Claim becomes an Allowed Secured Tax Claim: (i) payment in full in Cash of such Holder's Allowed Class 8 Claim, including interest at the applicable non-bankruptcy rate;  (ii) regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest at the applicable non-bankruptcy rate; (iii) the Collateral securing such Holder's Allowed Class 8 Claim; or (iv) such other treatment as to which such Holder and the Debtor, shall have agreed upon in writing. The modifications further provide that Harris County shall retain its lien for both pre-petition and post-petition tax years on the Collateral or the proceeds of the Collateral, if applicable, until such time as the taxes are paid. Based on such modifications, Harris County indicated its acceptance of the Plan.

      X.      Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9)).      The Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(l) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

      Y.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). In accordance with Bankruptcy Code § 1129(a)(l0), at least one Class of Claims that is Impaired under the Plan has

voted to accept the Plan, without including acceptances of the Plan by any insider.

        Z.      Feasibility (11 U.S.C. § 1129(a)(11)). The Plan contemplates liquidation and distribution of all of the Debtor's assets and, as such, there will be no need for further financial reorganization or liquidation. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

        AA.    Payment of Fees (11 U.S.C. § 1129(a)(12)). In accordance with Bankruptcy Code § 1129(a)(12), to the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.

        BB.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). In accordance with Bankruptcy Code § 1129(a)(13), the Plan does not alter retiree benefits to the extent any such benefits currently exist.

        CC.    Other Provisions of 11 U.S.C. § 1129(a). The provisions of 11 U.S.C. § § 1129(a)(14), (a)(15), and (a)(16) are not applicable to the Debtor.

        DD.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. §1129(b)). The Bankruptcy Court finds and concludes that Class 7 is an Impaired Class of Equity Interests, respectively, that are deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). The Plan is fair and equitable and does not discriminate unfairly as to Class 7. With respect to a class of *equity interests,* "fair and equitable" includes the requirement that either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, *or the value of the equity interest,* or (ii) the holder of any equity interest that is junior to the equity interest

of that class will not receive or retain under the plan, on account of that junior equity interest, any property.  11 U.S.C. §1129(b)(2)(C).

EE.      Based on the evidence, there is no value in the Equity Interests in the Debtor. Accordingly, the first prong of Bankruptcy Code § 1129(b)(2)(C) is satisfied.  In addition, no junior classes will receive any property under the Plan, so the second prong of Bankruptcy Code § 1129(b)(2)(C) is also satisfied.

FF.      Therefore, the Plan may be confirmed as to Classes 1, 2, 3, 4, 5, 6, and 7. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes of Claims and Equity Interests.

GG.      <u>Only One Plan – 11 U.S.C. §1129(c)</u>.  The Bankruptcy Court finds and concludes that, other than the Plan (including previous versions thereof), no other plan has been filed in the Case. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

HH.      <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.  No Person, including but not limited to the SEC (as defined below) or any other Governmental Authority, has requested  that  the Bankruptcy Court deny Confirmation on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of section 5 of the 1933 Act. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

II.      <u>Burden of Proof</u>. The Debtor has met its burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b).

## **Appeal of this Confirmation Order**

JJ.      The reversal or modification on appeal of this Confirmation Order does not

affect the validity of the authorizations and transfers contemplated under the Plan with respect to an entity that acquired property or an interest in property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorizations and transfers contemplated under the Plan are stayed pending appeal.

### Securities Findings and Conclusions/Exemptions

KK.    <u>Issuance of Trust Interests</u>.    The Liquidating Trust and Litigation Trust (collectively, the "<u>Trusts</u>") constitue or will constitute a "successor" and a "newly organized successor" to the Debtor under the Plan solely for purposes of Bankruptcy Code §§ 1145 and 1125(e) and the Debtor has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the Liquidating Trust Beneficial Interests and the Litigation Trust Beneficial Interests (collectively, the "<u>Trust Interests</u>").   With respect to the offer, sale, issuance and distribution of the Trust Interests (to the extent such interests and/or rights constitute securities under the 1933 Act or any State or local law) pursuant to the terms of the Plan, (1) neither the Debtor nor the Trusts are underwriters within the meaning of Bankruptcy Code  § 1145(b), (2) the  offer, sale, issuance and distribution of the Trust Interests shall be pursuant to the Plan, (3) the Trust Interests are to be distributed in exchange for Claims against the Debtor, and (4) the Trust Interests (to the extent constituting a security under the  1933 Act or  any State or local law), constitute securities of a successor or newly organized successor to the Debtor under the Plan for purposes of Bankruptcy Code §§ 1145 and l 125(e). The findings of fact and conclusions of law in this Paragraph shall be binding upon all parties to the Case, the Debtor, the Trusts and their Trustee(s), the U.S. Securities and Exchange Commission (the "<u>SEC</u>"), and all other federal, state, and local regulatory enforcement and other agencies.

LL.     Exemptions from Recording, Stamp, and Similar Taxes ((11 U.S.C. § 1146(a)). The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any security, and the making or delivery of any instrument of transfer pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

## Authorizations and Transfers Pursuant to the Plan

MM.     Legal Binding Effect.  The provisions of the Plan will bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

NN.     Release and Exculpation. The release and exculpation provisions are an integral part of the Plan and represent a valid exercise of the Debtor's business judgment. Pursuing any such claims against the Exculpation and Released Parties is not in the best interest of the Debtor's estate and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The failure to affect the release and exculpation provisions of the Plan would impair the Debtor's ability to confirm the Plan, and the release and exculpation provisions of the Plan are fair, equitable and reasonable. Accordingly, the compromises and settlements embodied in the release and exculpation provisions described in the Plan, except as may be expressly excluded in this Confirmation Order, are approved.

OO.     Issuance of Trust Interests. The issuance and distribution of the Trust Interests in accordance with the provisions of the Plan are reasonable and necessary.

PP.     Transfer of Liquidating and Litigation Trust Assets. The Debtor's transfer of the Liquidating Trust Assets and the Litigation Trust Assets (including, but not limited to, the Causes

609332421.1

of Action) to the respective Trusts on the Effective Date in accordance with the Plan and the Trust Agreements is reasonable and necessary and made in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and 1123(b)(3).

QQ.     Rejection of Executory Contracts and Unexpired Leases. The rejection of executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order is (i) a sound and reasonable exercise of the Debtor's business judgment, (ii) in the best interests of the Debtor, its Estate, holders of Claims and Equity Interests, and (iii) necessary for the implementation of the Plan.

RR.     Plan Documents Valid and Binding. All other documents reasonably necessary to implement the Plan, including, without limitation, the Trust Agreements, have been negotiated in good faith and at arm's length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtor and its Estate and have been negotiated in good faith and at arm's length.

SS.     Compliance with Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Debtor that submitted it and filed it is appropriately identified. The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

**The Trusts Are Not A Successor to the Debtor**

TT.     Except for purposes of compliance with Bankruptcy Code § 1145 and as otherwise provided herein, the Trusts and their affiliates, successors, or assigns are not, as a result of actions taken in connection with the Plan, a successor to the Debtor or a continuation or substantial continuation of the Debtor or any enterprise of the Debtor. The Trusts shall be

18

deemed to be a successor to the Debtor only for purposes of compliance with Bankruptcy Code §1145; provided however the Liquidation Trust shall be the successor as to laws reasonably designed to protect the public health and safety (collectively, the "Safety Laws") including, but not limited to, plugging and abandonment obligations, Maintenance and Monitoring Obligations or any other safety obligations that may be provided for in Article II.A.3 of the Plan and/or in other applicable federal laws and regulations with respect to any federal OCS leases or rights-of-way that are not being abandoned by the Debtor in accordance with this Confirmation Order and the Plan; and the requirements sert forth in any federal OCS leases or rights-of-way with respect to any federal OCS leases or rights-of-way that are not being abandoned by the Debtor in accordance with this Confirmation Order and the Plan, and for no other reason.

### Miscellaneous Provisions

UU.     <u>Best Interests of Persons</u>. Confirmation of the Plan is in the best interests of the Debtor and its Estate.

VV.     <u>Findings of Fact and Conclusions of Law on the Record.</u> All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

### ORDER

Based on the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

1.     <u>Confirmation of Plan</u>. The Plan, as modified herein, is **APPROVED** and **CONFIRMED** under Bankruptcy Code §1129.    Except as otherwise set forth in this

19

Confirmation Order, the Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2. <u>Objections Overruled</u>. All objections that have not been withdrawn, waived, resolved by stipulation, or settled are **OVERRULED** on the merits.

3. <u>Approval of Plan Documents</u>. Subject to paragraph 6, the form and substance of the Plan documents, as reflected in the Plan Supplement or otherwise (including all exhibits and attachments thereto or hereto and documents referred to therein or herein), are hereby **APPROVED.** The execution, delivery, and performance by the Debtor, the Trusts and their respective Trustee(s) of the Plan Documents are authorized and approved without the need for further corporate or other organizational action or further Order or authorization of the Bankruptcy Court. The Debtor is authorized and empowered to make any and all modifications to any and all documents included as part of the Plan and Plan Supplement that may be agreed to by the parties thereto and that are consistent with the Plan and the terms of this Confirmation Order.

4. <u>Approval of Plan Stipulations</u>. To the extent not previously approved by order of the Court, the Plan Stipulations **are <u>APPROVED in all respects. The Court approves and incorporates herein by reference the Plan Stipulations attached to this Confirmation Order as Exhibit "C". In the event of a conflict between a Plan Stipulation and this Confirmation Order, the Plan Stipulation shall control with respect to the treatment of the parties to and issues addressed by each applicable Plan Stipulation</u>**.

5. <u>Authority</u>.

    a. The Debtor, the Trusts, the Liquidating Trustee, and the Litigation Trustee are authorized and empowered to take such actions and do all things as may be necessary or required to implement and effectuate the Plan, the transfer of the Liquidating Trust Assets and the Litigation Trust

Assets to their respective trusts, the Litigation Trust Agreement and the Liquidating Trust Agreement, and this Confirmation Order.

b.     The Debtor, the Trusts and their respective Trustee(s), and their respective directors, officers, partners, members, managers, trustees, agents, representatives, and attorneys, are authorized, empowered, and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents (collectively, "Documents"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transfers contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court or further action by their respective directors, stockholders, managers, members, or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, managers, members, or other beneficiaries of such entities.

c.     The Debtor is further authorized, empowered, and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable governmental authority any and all amended and/or restated certificates or articles of incorporation, organization, or formation or amendments to limited liability company agreements, operating agreements, or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental authorities with respect to compliance with Bankruptcy Code § 1123(a)(6).

This Confirmation Order shall constitute all approvals and consents, if any, required by all applicable business organization, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the Plan and all actions authorized by this Confirmation Order; provided, however, that: (i) any pending sales or transfers that are subject to the approval of the Regulatory Agencies under applicable federal laws and regulations shall continue to be subject to the approval of such Regulatory Agencies in

609332421.1

their sole discretion; and (ii) any entities seeking to decommission any properties encompassed by any federal OCS lease or right-of-way shall be required to comply with permitting and other obligations required by federal laws and regulations for such decommissioning to be determined in the Regulatory Agencies' discretion.

d.   Any officer of the Debtor and, from and after the Effective Date, the Liquidating Trustee and the Litigation Trustee are authorized to execute and perform, for and on behalf of the Debtor, any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and to certify or attest to any of the foregoing actions taken by the Debtor. The execution of any such Document or instrument or the taking of any such action by any officer of the Debtor or, from and after the Effective Date, the Liquidating Trustee or the Litigation Trustee, shall be, and hereby is, deemed conclusive evidence of the authority of such action.

e.   As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust) and the Litigation Trustee (as trustee of the Litigation Trust) is hereby irrevocably appointed as the Debtor's attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of the Debtor and in the name of the Debtor to take any action and to execute any instrument that the Liquidating Trustee or the Litigation Trustee, in their sole respective discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Liquidating Trust Assets in the Liquidating Trust and of the Litigation Trust Assets in the Litigation Trust, including without limitation to issue, execute, deliver, file, and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Liquidating Trustee or Litigation Trustee may deem necessary or desirable in furtherance thereof, each solely to the extent and as authorized in the Liquidating Trust Agreement and the Litigation Trust Agreement.

f.   All amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, the partnership agreements, and/or bylaws of the Debtor and all other corporate action on behalf of the Debtor as may be necessary to put into effect or carry out the terms and intent of the Plan, including, without limitation, any mergers, consolidations, or dissolutions of the Debtor, may be effected, exercised, and taken without further action by the Debtor's directors, officers,

609332421.1

managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, and/or members of the Debtor. The Liquidating Trustee and Litigation Trustee, as authorized signatory of Debtor, is authorized to execute any document, certificate or agreement necessary to effectuate any and all transactions contemplated under the Plan on behalf of such Debtor (including, without limitation, any mergers, consolidations or dissolutions of the Debtor), and file with the Secretary of State of the State of Texas any articles or certifications of merger or dissolution or such other documents as may be necessary in order to effect such actions, which documents, certificates and agreements shall be binding on the Debtor, all holders of Claims, and all holders of Equity Interests and, upon execution by the Liquidating Trustee or the Litigation Trustee as authorized herein, shall have the same force and effect as if approved by all requisite partners, members, managers or Equity Interest holders of the Debtor.

g.    The Liquidating Trust, the Litigation Trust, the Liquidating Trustee and the Litigation Trustee shall have no liability or obligation to act with respect to any Abandoned Assets (as defined below); *provided, however,* that the Liquidation Trust, and Liquidating Trustee shall be required to comply with the relinquishment procedures provided for in 30 CFR 556 (Subpart K) as a condition of abandonment. However, if an action is required with respect to an Abandoned Asset, the Liquidating Trustee and the Litigation Trustee shall have the option, but not the obligation, to take an action with respect to such Abandoned Asset. Nothing herein shall create any liability of the Liquidating Trustee, the Litigation Trustee, the Litigation Trust or the Liquidating Trust should it decide to decline to take any action respecting any Abandoned Assets other than as expressly set forth in this paragraph.

6.    <u>Approval of Liquidating Trust Agreement</u>. The Liquidating Trust Agreement in substantially the form filed by the Debtor at Docket No. 1092-9 (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "<u>Liquidating Trust Agreement</u>") is **APPROVED,** and the Debtor, the Liquidating Trustee, and the Liquidating Trust are authorized to take all actions contemplated under the Liquidating Trust Agreement, including making appropriate modifications that do not materially affect substantive rights. Notwithstanding the foregoing or anything in the Plan, Confirmation Order, or the form Liquidating Trust Agreement filed with the Court, the

23

Liquidating Trust Agreement Committee shall be comprised of the Liquidating Trustee (to be jointly selected by Platinum and the Backstop Lenders), a member selected by Platinum, and a member selected by the Backstop Lenders.  A member may be removed by a majority vote of the committee.  The party whose designee is removed may challenge the removal in the Bankruptcy Court as not being a removal for cause.  The Liquidating Trustee may hire professionals, and agree to such retention terms, only after consulting with the Liquidating Trust Committee.

7.      Approval of Litigation Trust Agreement.  The Litigation Trust Agreement  in substantially the form filed by the Debtor at Docket No. 1092-7 (together with  all schedules, addendums, exhibits, annexes, and other attachments thereto and as  supplemented, amended, and modified, the "Litigation Trust Agreement") is **APPROVED,** and the Debtor, the Litigation Trustee, and the Litigation Trust are authorized to take all actions contemplated under the Litigation Trust Agreement, including making appropriate  modifications that do not materially affect substantive rights. As provided in Article VIII(A)(7) of the Third Amended Plan, no Holder of an Allowed Claim (including any adjustment thereto as provided in any Stipulation) shall be entitled to receive, on account of their Claim, more than the Allowed Claim amount, plus interest to the extent allowed under the Plan, or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement or by otherwise applicable law.  In the event that there are any funds remaining in the Litigation Trust after payment of such Allowed Claims in full, the Litigation Trustee shall file a motion with the Bankruptcy Court advising the Bankruptcy Court of the same, and the remaining funds shall be paid to prepetition holders of equity interests in proportion to their holdings as of the Petition Date, as determined by the Bankruptcy Court.

8.      Settlements. Each settlement embodied in the Plan and this Confirmation Order

24

between the Debtor and holders of Claims and Equity Interests is **APPROVED** in all respects. The Court approves and incorporated herein by references the Stipulations attached to this Confirmation Order as Composite Exhibit C. In the event of a conflict between a Stipulation and this Confirmation Order, the Stipulation shall control with respect to the treatment of the parties to and issues addressed by the applicable Stipulation.

9.      <u>Plan Classification Controlling</u>. The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or to reject the Plan; and (b) shall not be binding on the Debtor except for voting purposes.

10.      <u>Preservation of Causes of Action</u>. The provisions of <u>Article VII</u> of the Plan are hereby approved in their entirety. The Debtor, the Liquidating Trust, the Liquidating Trustee, the Litigation Trust, and the Litigation Trustee, as applicable, expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor, the Liquidating Trust, the Litigation Trust, the Litigation Trustee and the Liquidating Trustee, as applicable, expressly reserve all of their respective Causes of Action for later adjudication.

11.      <u>Trust Assets; Abandonment</u>. The property of the Debtor's Estate will not revest in the Debtor on or after the Effective Date. Except as otherwise set forth in the Plan or this Confirmation Order: (i) all property of the Estate constituting the Liquidating Trust Assets shall

be conveyed and transferred by the Debtor to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances, but subject to the Liquidating Trust's obligations under the Plan and the Liquidating Trust Agreement; and (ii) all property of the Estate constituting the Litigation Trust Assets shall be conveyed and transferred by the Debtor to the Litigation Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances, but subject to the Litigation Trust's obligations under the Plan and the Litigation Trust Agreements.  From and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities under, or related to the ownership or operation of, the Liquidating Trust Assets. Notwithstanding anything to the contrary herein or in the Plan, the assets identified in the attached Exhibit B, which amends Exhibit D to the Disclosure Statement, or that have been otherwise abandoned by the Debtor pursuant to an Order of this Court prior to the Effective Date (collectively, the "Abandoned Assets") shall not be transferred or assigned to, or vested in, the Liquidating Trust or the Litigation Trust.

12.     Liquidating Trustee; Liquidating Trust Committee; Litigation Committee. Richard Schmidt is hereby approved to serve as the Liquidating Trustee and Litigation Trustee on an interim basis, subject to the terms set forth in the Plan, including the Plan Supplement, and the Liquidating Trust Agreement and the Litigation Trustee Agreement. Mr. Schmidt and his successor(s) are authorized to take the actions contemplated in the Plan, the Liquidating Trust Agreement, the Litigation Trust Agreement, and this Confirmation Order. The Liquidating Trustee and Litigation Trustee shall be permitted to pay his fees and expenses and the fees and expenses of his professionals for services rendered in connection with this Case, the Liquidating Trustee's appointment under the Plan, the Liquidating Trust Agreement, the Litigation Trustee's appointment under the Plan, the Litigation Trust Agreement, and this Confirmation Order to the

extent permitted by the Plan, the Plan Supplement, the Litigation Trust Agreement and the Liquidating Trust Agreement. Such payments shall be made by the Liquidating Trust or the Litigation Trust in accordance with the Plan and the Liquidating Trust Agreement.

13.     <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §1123(b)(2)</u>. Except to the extent (a) the Debtor has previously assumed, and (if applicable) assigned, or rejected an executory contract or unexpired lease or (b) prior to the Effective Date, the Bankruptcy Court has entered an Order authorizing the assumption, and (if applicable) assignment, of an executory contract or unexpired lease, the Debtor's executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123.

14.     <u>Authority</u>. All actions and transfers contemplated under the Plan, including but not limited to, any certificates, agreements or other documents or instruments to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, and the Litigation Trust Assets to the Litigation Trust, free and clear of interests, Claims, Liens, and encumbrances shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtor's directors, officers, managers, and/or members.

15.     <u>Legal Binding Effect</u>. The provisions of the Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

16.     <u>Exculpations, Injunction, and Releases</u>. The following exculpations, injunction, and releases, which are also set forth in the Plan, are approved and authorized in their entirety:

17.     <u>Exculpation and Limitation of Liability</u>. ***The Exculpation and Released***

*Parties shall not have and shall not incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of the Bankruptcy Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and except for Montco, with respect to Montco's obligations under the Montco Services Agreement, as amended by the First Amended Montco Services Agreement and Second Amended Montco Services Agreement and, in all respects, the Exculpation and Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

*Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for the good and valuable consideration provided by each of the Exculpation and Released Parties, the adequacy of which is hereby confirmed, all Professionals retained by order of the Court and Blackhill Partners LLC each for their work done in connection with this Chapter 11 Case, the Creditor's Committee (and the members of the committee, solely in their capacity as committee members, for their work in connection with this Chapter 11 case), the DIP Lenders, Indenture Trustee, and the professionals retained by such parties, are deemed released and discharged by the Debtor and its Estate from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity*

609332421.1

*Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Exculpation and Released Parties, the restructuring of claims and interests prior to or during this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the Exculpation and Released Parties that constitutes actual fraud, willful misconduct, or gross negligence, provided, however, except as to Zach Weiner solely in his capacity as post-petition board member of the Debtor, nothing in this section or the Plan shall release, waive or otherwise serve as a defense for Platinum or any director, officer, employee, control person or insiders (an insider as defined under the Bankruptcy Code) of Platinum. For the avoidance of any doubt, nothing in this paragraph shall be construed to conflict with, or override, the Government Carve-Out or the Government Reservation of Rights and, in the event of any conflict, the Government Carve-Out and the Government Reservation of Rights shall control.*

*Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.*

*Nothing contained in this Plan shall operate as a release, waiver, or discharge of any Claim, Cause of Action, right or other liability against members of the Creditors' Committee in any capacity other than as a member of the Creditors' Committee.*

*Notwithstanding anything to the contrary in the Plan, the Plan documents or elsewhere in the Confirmation Order, nothing shall release, discharge or immunize any third party or non-debtor entity from any debt, obligation, liability, claim, action, proceeding, defense or cause of action in connection with any claim, action, proceeding, defense or cause of action, brought, or that may be brought, by the United States of America or its agencies including, without limitation, as may otherwise be provided for in this section (as applied to the United States and its agencies, the "Government Carve-Out").*

18.     EXCEPT   AS   OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, NEITHER THE DEBTOR,  THE ESTATE, THE  TRUSTS AND THEIR RESPECTIVE TRUSTEES, THE DIP LENDERS, THE COMMITTEE, THE FORMER AND  CURRENT MEMBERS OF THE COMMITTEE (BUT  SOLELY  IN  THEIR   CAPACITY AS MEMBERS OF THE COMMITTEE) NOR ANY HOLDER OF A  CLAIM OR EQUITY INTEREST OR RELATED PERSONS TO ANY OF THE FORGOING SHALL HAVE ANY RIGHT OF ACTION AGAINST THE DEBTOR, ITS DIRECTORS AND OFFICERS, THE ESTATE, THE TRUSTS AND THEIR RESPECTIVE TRUSTEES, THE DIP LENDERS, THE SENIOR  SECURED NOTEHOLDERS, THE SENIOR SECURED NOTES INDENTURE  TRUSTEE, THE COMMITTEE, THE FORMER AND CURRENT MEMBERS OF THE   COMMITTEE (BUT SOLELY IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE)  OR ANY OF THEIR RESPECTIVE ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS,  OR OTHER PROFESSIONALS,

FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF THE CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE PREPARATION AND DISTRIBUTION OF THE DISCLOSURE STATEMENT, THE ADMINISTRATION OF THE LIQUIDATING TRUST, THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, OR THE OFFER, ISSUANCE, SALE OR PURCHASE OF A SECURITY OFFERED OR SOLD UNDER THIS PLAN, PROVIDED SUCH EXCULPATED PERSON DID NOT AND DOES NOT ENGAGE IN WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND PROVIDED FURTHER THAT SUCH EXCULPATION SHALL NOT EXTEND TO SUCH EXCULPATED PERSON'S RIGHTS AND OBLIGATIONS UNDER THIS PLAN, THE PLAN DOCUMENTS OR THE LIQUIDATING TRUST AGREEMENT. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL, OR SHALL BE DEEMED TO, EXCULPATE ANY EXCLUDED PARTY FROM ANY SPECIFIED LITIGATION CLAIM.

19. ***Injunction Enjoining Holders of Claims Against, and Equity Interests in the Debtor.*** *Except as set forth in the Plan, Confirmation Order, Stipulation, or otherwise by settlement, all Persons are hereby stayed, restrained, and enjoined from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtor, or any property thereof, or against any of the Debtor's transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Interest; provided, that this provision shall not prevent any*

*governmental unit from enforcing such governmental unit's police or regulatory power and shall not impede or limit the United States' rights to assert setoff or recoupment rights to the fullest extent provided by law; and provided, that nothing in this Section shall prevent a creditor from exercising its recoupment or setoff rights to the extent they are otherwise valid under Section 553 of the Bankruptcy Code.*

20.     <u>Exemption from Certain Taxes</u>. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the releases of Liens contemplated under the Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

21.     <u>Exemption from Securities Laws</u>. To the extent constituting securities under the 1933 Act, the Trust Interests offered, sold, issued and/or distributed pursuant to the Plan are deemed to have been offered, sold, issued and distributed pursuant to Bankruptcy Code § 1145. Pursuant to Bankruptcy Code § 1145, the exemption of the offer and sale of securities from the registration requirements of the 1933 Act, and any state or local law requiring registration for

32

the offer or sale of a security, applies with respect to the Liquidating Trust Interests and the Litigation Trust Interests distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act. Without limiting the generality of the foregoing the offer, sale, issuance, and distribution of the Liquidating Trust Interests and Litigation Trust Interests to Claimants pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer, broker, or dealer thereof pursuant to Bankruptcy Code § 1145(a).

22.     Injunctions and Automatic Stay. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of or prior to the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

23.     Cancellation of Securities. Unless otherwise provided for in the Plan, on the Effective Date, all promissory notes, stock, instruments, indentures, bonds, agreements, certificates or other documents evidencing, giving rise to, or governing any Equity Interest in, or debt obligation of, the Debtor shall be deemed cancelled and shall represent only the right, if any, to participate in the Distributions contemplated by the Plan. Except as otherwise provided in the Plan, the obligations of the Debtor thereunder or in any away related thereto shall be fully released, terminated, extinguished and discharged and, with respect to the Equity Interests in the Debtor, retired and thereafter cease to exist, in each case without further notice to or order of the

609332421.1

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

24.     <u>Abandonment of Certain Assets</u>.     Except as expressly provided in this paragraph and in Article II.A.3 of the Plan, the Abandoned Assets (including the Relinquished Leases and ROWs) shall be deemed abandoned as of the Effective Date pursuant to Bankruptcy Code § 554 without further order of the Bankruptcy Court. Entry of this Confirmation Order shall constitute (i) approval, pursuant to Bankruptcy Code section 554, of the abandonment of the Abandoned Assets and (ii) authorization to relinquish any interest the Debtor's hold in the Abandoned Assets. Such abandonment and/or relinquishment does not alter the obligation of the Debtor or the Liquidating Trust to comply with any and all Safety Laws including but not limited to plugging and abandonment obligations, Maintenance and Monitoring Obligations, or any other safety obligations that may be provided for in Article II.A.3 of the Plan and/or in other applicable federal laws and regulations or in any manner extinguish, modify, or otherwise limit (a) the obligations of non-debtor third parties, for plugging and abandonment obligations or bonding obligations (or any other obligations for which they are liable) as may be provided for under the Plan and/or in applicable federal laws and regulations or the rights of the United States to enforce such Safety Laws.

## Miscellaneous Provisions

25.     The Plan shall not become Effective until the conditions set forth in Article VIII(B) of the Plan are satisfied, and in addition, the Debtor demonstrates that it has obtained access to $250,000 to provide for ongoing health and safety operations post-Confirmation.

26.     <u>Effective Date Payments</u>.     Within 30 days after the Effective Date, each Professional whose retention with respect to the Debtor's Case has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall file

with the Bankruptcy Court, and serve on all parties required to receive notice, a final Fee Application. Such claims shall be paid by the Liquidation Trustee upon Final Order as set forth in Article II.D of the Plan.

27.    On the Effective Date, to the extent not otherwise previously funded, the DIP Lender shall fund up to $350,000 of the Investigation Loan (See Docket No. 717), which funds shall be provided to the Litigation Trustee.

28.    <u>Set Off and Recoupment</u>. Nothing in Article VIII(B)(2) of the Plan or paragraph 18 of this Confirmation Order shall prevent a creditor from exercising recoupment or set off rights to the extent they are provided for under Section 553 of the Bankruptcy Code or as set forth in a stipulation incorporated herein. Notwithstanding anything to the contrary in this Order or the Plan, any rights, claims, and/or defenses belonging to or assertable by Chevron U.S.A. or its affiliates, as to setoff and/or recoupment, if any as well as the Debtor and the Liquidating Trust's objection to such claims, and any response or defense to any such objection, all of which are expressly preserved and not affected by operation of this Order or the Plan. Notwithstanding anything to the contrary in this Order or the Plan, any rights to set off or recoupment that may be asserted by the United States and any or all of its agencies are expressly preserved.

29.    <u>Reservation of Rights in Favor of the United States.</u>  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or elsewhere in this Confirmation Order, nothing shall preclude, bar or enjoin the United States of America, or its agencies, from taking any and all actions to: (i) enforce its police or regulatory powers; (ii) regulate and administer its federal programs; or (iii) assert any setoff or recoupment rights they may have (all of which are expressly preserved).  For the avoidance of any doubt, the provisions of this paragraph expressly preserve, without limitation, the regulatory powers of the Regulatory Agencies to approve or disapprove any sales or transfers of federal leases or rights-of-way on the OCS in their sole

35

discretion in accordance with applicable federal laws and regulations. For the further avoidance of any doubt, nothing in the Plan, the Plan Supplement or elsewhere in this Confirmation Order shall preclude, bar, or enjoin the United States of America, or its agencies, from bringing any claim, action, proceeding, defense or cause of action to the extent such claim, action, proceeding, defense or cause of action is permitted by 11 U.S.C. § 1141 including, without limitation, as provided by 11 U.S.C. § 1141(d)(3) and 11 U.S.C. § 727(a) (the "Governmental Reservation of Rights").

30.     <u>Effectiveness of Montco Agreement</u>. Nothing in this Order, the Plan, or in the implementing agreements provided for in the Plan, shall modify, alter, amend, vacate, impair, subordinate, or affect any rights, claims, liabilities, or obligations under and pursuant to the Montco Services Agreement, the First Amendment to the Montco Services Agreement, the Second Amendment to the Montco Services Agreement, and the implementing Orders of this court directly pertaining to such agreement as amended. Subject to further order of this Court, the Montco decommissioning plan shall move forward under the decommissioning plan attached as Exhibit D (which amends Exhibit A to the Disclosure Statement), Exhibits B and C to the Disclosure Statement, and pursuant to the order dated June 8, 2016, authorizing the First Amendment to the Montco Services Agreement (Doc. 999) and dated June 27, 2016, authorizing the Second Amendment to the Montco Services Agreement (Doc. 1146).

31.     <u>Reservation of Rights</u>. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

32.     <u>Notice of Effective Date</u>. On or before five Business Days after the occurrence

of the Effective Date, the Liquidating Trustee shall file on the docket of the Case a notice of the entry of the Confirmation Order, the occurrence of the Effective Date, and such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

33.     <u>Waiver or Estoppel</u>.   Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated, by virtue of an agreement made with the Debtor or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.

34.     <u>Non-Occurrence of Effective Date</u>. If confirmation does not occur, or if the Effective Date does not occur on or prior to 90 days after the Confirmation Date or such later date as is consented to by the Debtor in accordance with the Plan, then (a) the Plan shall be null and void in all respects, (b) settlements or compromises embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), rejections of executory contracts or unexpired leases affected by the Plan, and any documents or agreements executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

35.     <u>References to Plan Provisions</u>. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair

37

the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

36.   <u>Reversal</u>.   If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

37.   <u>Applicable Non-Bankruptcy Law</u>. Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

38.   <u>Modification of the Plan Prior to Substantial Consummation</u>. After the Confirmation Date and prior to the Effective Date of the Plan, the Debtor may, under Bankruptcy Code § 1127(b), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the

609332421.1

Bankruptcy Rules or Order of the Bankruptcy Court.

39.     <u>Conflicts between Plan and Confirmation Order</u>. If there is any conflict between the Plan (as supplemental by the Plan Supplement) and this Confirmation Order, the terms of this Confirmation Order shall control.

40.     <u>Severability of Plan Provisions</u>. Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

41.     <u>Retention of Jurisdiction</u>. This Bankruptcy Court's retention of jurisdiction as set forth in <u>Article VIII</u> of the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

42.     <u>Nonseverable and Mutually Dependent</u>. The provisions of this Confirmation Order are nonseverable and mutually dependent.

43.     <u>Recordable Form</u>. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Authority for filing and recording purposes without further or additional orders, certifications or other supporting documents. Further, the Bankruptcy Court authorizes the Liquidating Trustee and the Liquidating Trust, as applicable, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

44.     <u>Waiver of Stay</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (as applicable), the Debtor shall be authorized to consummate the Plan and the transfers contemplated thereby immediately after entry of this Confirmation Order.

45.     <u>Release of Avoidance Action Claims against Regulatory Agencies</u>. Notwithstanding anything else to the contrary in the Confirmation Order, the Plan, the Plan

Supplement, the Liquidation or Litigation Trust Agreements, or any other document executed in connection with the Plan, any and all of the Debtor's Avoidance Actions against the Regulatory Agencies are hereby released, waived, and abandoned by the Debtor.

46.     <u>Preservation of Rights Pursuant to Final DIP Order</u>.   Notwithstanding anything else to the contrary in this Confirmation Order, the Plan, the Plan Supplement, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any other exhibits or documents associated in any way with the Plan, (a) all rights to adequate protection, including any diminution in value claims and replacement liens of the Indenture Trustee contained in prior orders of this Court for use of cash collateral or DIP financing, and (b) all rights of the DIP Lenders provided for in (i) the *Final Order Under 11 U.S.C. § 105, 361, 362, 363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 507 and Bankruptcy Rules 2002, 4001 and 9014 Authorizing the Debtor to Obtain Post-Petition Financing on a Final Basis* [Doc. No. 717]; and (ii) the *Order Approving (I) Release of Certain Escrowed and Reserved Funds, (II) Montco Incentive Fee, (III) Adequate Protection Payment, and (IV) Related Miscellaneous Relief* are hereby specifically acknowledged and preserved.

47.     <u>Preservation of Prior Merit Decommissioning Orders.</u>   Notwithstanding any other provision of this Order and for the avoidance of doubt, nothing herein shall modify, alter, amend, vacate, impair, subordinate, or affect the rights, claims, liens, obligations, and other terms of the prior orders in the Bankruptcy Case involving Merit Energy Company, LLC, other co-owners, predecessor owners, and Debtor, including the orders entered on Setpember 29, 2015 (the "JAB-Merit Order") (Doc. 230), October 28, 2015 (the "9019 Order") (Doc. 368), January 19, 2016 ("Merit Cash Collateral Order") (Doc. 609), the order dated March 1, 2016, authorizing Debtor to enter into the Montco Services Agreement (Doc. 682), the order dated June 8, 2016,

609332421.1

authorizing the First Amendment ot the Montco Services Agreement (Doc. 999), and the order dated June 27, 2016 authorizing the Second Amendment to the Montco Services Agreement (Doc. 1146).

48.     Arogonaut Insurance Company Provisions.   Notwithstanding anything else to the contrary in this Confirmation Order, the Plan, the Plan Supplement, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any other exhibits or documents associated in any way with the Plan, all rights of Argonaut Insurance Company ("Argonaut") in and to any and all cash collateral it now possesses or in which it has a security interest by and through (i) the Pre-Petition Argo Indemnity and Collateral Documents (as defined in paragraph 4(f) of the Final Order under 11 USC 105, 361, 362, 363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 507 and Bankruptcy Rules 2002, 4001, and 9014 Authorizing the Debtor to Obtain Post-Petition Financing on a Final Basis [Docket No. 717]) and (ii) as created or preserved through prior orders of this Court in this bankruptcy case, are hereby specifically acknowledged and preserved in favor of Argonaut and in relation to all parties for all purposes.   Without limiting the applicability of the foregoing in any way, this preservation of rights in favor of Argonaut specifically subordinates in favor of Argonaut the rights of any and all parties claiming any revisionary interest in any cash collateral held by Argonaut through this Confirmation Order, the Plan Supplement, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any other exhibits or documents associated in any way with the Plan, or otherwise.   In addition, it is ordered that all Losses (as defined in the Pre-Petition Argo Indemnity and Collateral Documents) associated with any and all surety bonds posted by Argonaut and as contemplated by the Pre-Petition Argo Indemnity and Collateral Documents shall be paid in full and all surety bonds issued by Argonaut Insurance Company shall be fully canceled and released without residual

41

lability prior to the effectiveness of any such residual rights or interests in any cash collateral held by Argonaut.  All of Argonaut's indemnity and collateral rights under all applicable documents and orders of this Court with and affecting all parties are specifically preserved until all Argonaut surety bonds are fully canceled and released without residual liability.

49.     <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of the Confirmation Order.

SIGNED: July 13, 2016

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE