Case 15-34287   Document 1805   Filed in TXSB on 02/12/18   Page 1 of 9



ENTERED
02/12/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **CASE NO: 15-34287** |
| **OPERATIONS, LLC,** *et al* | § | |
| Debtor(s) | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

Richard Schmidt, Trustee of the Black Elk Litigation Trust, objected to claims filed by Delaware Trust Company in Black Elk Energy Offshore Operations, LLC's bankruptcy. Delaware filed a motion for summary judgment to disallow the Trustee's claim objections.

Delaware's motion for summary judgment is granted.

## Background

Black Elk was formed in 2007 with a business model that consisted of reworking abandoned oil wells and producing oil that other operators ignored. (ECF No. 1783 at 3). The 2008 financial crisis and a rapid decline in oil prices forced Black Elk to look for additional capital to continue its operations. (ECF No. 1783 at 3).

To remedy this issue, Black Elk entered into an Indenture and a Collateral Agreement on November 21, 2010, that provided Black Elk with nearly $70,000,000.00 in capital in exchange for Senior Secured Notes due in 2015 with an interest rate of 13.75% per annum. (ECF No. 1737-1 at 5). The Bank of New York Mellon Trust Company, N.A. was the initial Indenture Trustee on behalf of the Note Holders but has since been succeeded by Delaware. (ECF No. 1737 at 3). Black Elk also found additional financing from Platinum Partners, LP, a hedge fund that agreed to provide Black Elk with financing in exchange for an equity interest. (ECF No.

1783 at 3). Platinum Partners agreed to subordinate its rights to the Senior Note Holders. (ECF No. 1783 at 3).

Oil prices remained low and Black Elk continued struggling with capital, leading Black Elk to attempt to sell some of its assets to Renaissance Offshore, LLC in July 2014. According to the terms of its security agreements, the proceeds of this proposed sale were to be distributed first to the Senior Note Holders and then to Platinum. (ECF No. 1783 at 3). However, through a series of transactions, Platinum allegedly orchestrated a scheme where it purchased enough of the Senior Notes to force a vote and subordinate the Senior Note Holders' interests in favor of Platinum's junior interest in equity, thereby funneling the proceeds to Platinum. *See Schmidt v. Nordlicht*, 2017 WL 526017 at *1 (S.D. Tex. February 9, 2017).

After the failure of its attempted sale and failed efforts to reverse its financial decline, several creditors filed an involuntary chapter 7 bankruptcy petition against Black Elk on August 11, 2015. (*See* ECF No. 1). At Black Elk's request, the Court granted relief and converted the case to chapter 11. (*See* ECF No. 69). As part of the chapter 11 proceeding, Delaware filed two proofs of claim: Claims 121 and 127. (ECF No. 1737 at 3). Claim 121 seeks to recover $73,354,284.73, which represents the amount of principal and interest owed to Senior Note Holders under the Indenture. (ECF No. 1737-1 at 6). Claim 127 asserts all rights to equity interests provided to Delaware as security under the Collateral Agreement. (ECF No. 1737-2 at 11).

On July 14, 2016, Black Elk's third amended Plan of liquidation was confirmed and named Richard Schmidt as Trustee of the Litigation Trust. (ECF no. 1475 at 4). The Trustee initiated an adversary proceeding against Platinum alleging that the funds transferred to Platinum from the Renaissance sale constituted a fraudulent transfer. *See Schmidt*, 2017 WL 526017, at

*1–2.  The Trustee also filed objections to both of Delaware's claims based on Platinum's interest in the Senior Notes and participation in the vote that subordinated the Senior Note Holders' interests.  (*See generally* ECF No. 1475).  According to the Trustee, if the funds transferred to Platinum in the Renaissance sale are fraudulent, Platinum should not be able to simultaneously rely on its position as an Indenture Note Holder in order to achieve the same inequitable result.  (ECF No. 1475 at 7).  The Trustee asks the Court to equitably subordinate Platinum's interest as a Note Holder to prevent any benefit going to Platinum from the fraudulent transaction.  (ECF No. 1475 at 7).

Delaware argues that its claims are allowed in their full amount under Black Elk's confirmed Plan and urge that their validity is barred under *res judicata* and the Law of the Case doctrine.  (ECF No. 1737 at 6).  Delaware also asserts waiver as a defense to these objections: since Black Elk negotiated and confirmed the terms of the Plan that approved the claims at issue, and the Trustee is limited to Black Elk's rights, his objections are barred by Black Elk's waiver.  (ECF No. 1737 at 7–8).  Delaware also claims that the Plan is substantially consummated, which prevents any modification or revocation that the Trustee's objection would cause.  (ECF No. 1737 at 8–9).  Lastly, the terms of the Indenture and Delaware's position as Trustee prevent Delaware from granting the relief the Trustee seeks.  (ECF No. 1737 at 10–11).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.  This is a core matter under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056 (incorporating Rule 56 in adversary proceedings).

A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence to support an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV.

P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Florida Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient

evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

*Res Judicata*

Delaware argues that the Trustee's objection is barred under the doctrine of res judicata because the plan specifically allows its claims in their full amount. (ECF No. 1737 at 5–6). Delaware points to language in the plan that states, "the litigation trust reserve[s] the right to object to any claim (*other than claims deemed in the plan to be Allowed Claims*)." (ECF No. 1204-1 at 34 (emphasis added)). The Trustee claims that Delaware's reading of the confirmed plan is too narrow and ignores important sections of the plan that preserve the Trustee's right to object. (ECF No. 1783 at 6–7).

A bankruptcy court's order confirming a plan of reorganization constitutes a final judgment. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987). Bankruptcy courts view confirmed plans of reorganization as contracts. *In re Davis Offshore, LP*, 644 F.3d 259, 266 (5th Cir. 2011). After confirmation, the debtor's entire estate is dissolved, including potential causes of action that belong to the debtor. *In re SI Restructuring, Inc.*, 714 F.3d 860, 864 (5th Cir. 2013). If a claim is not properly preserved, the confirmed plan's res judicata effect nullifies the claim. *In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998). In order for claims to be preserved post-confirmation, the plan must make a "specific and unequivocal" reservation of a claim. *In re SI Restructuring*, 714 F.3d at 860. To meet this standard, a reservation must

provide creditors with sufficient notice to know whether the plan's terms resolve a dispute, or whether an entity seeks to pursue the dispute after confirmation. *Id*. The Fifth Circuit has held that "an objection to a proof of claim serves to initiate a contested matter and thereby serves the purpose of putting the parties on notice that litigation is required to resolve the objection." *In re Taylor*, 132 F.3d at 260 (citing *Simmons v. Savell*, 765 F.2d 547, 549 (5th Cir. 1985)).

Turning to the Plan, its terms dictate that Delaware's claim is deemed allowed. The Third Amended Plan of Liquidation confirmed by the Court on July 13, 2016, sets out six impaired classes of claims and their treatment under the Plan. (ECF No. 1092-1 at 35). Section V D specifically refers to Delaware's claims stating: "The Senior Notes Claim shall be *allowed in the full amount* of the Senior Notes Pre-Petition Obligations." (ECF No. 1092-1 at 35 (emphasis added)). On its face, the Plan allows Delaware's claim to the Senior Notes and no reservations are made preserving any right to object to the claim. After the Court's confirmation, the Plan's terms were reduced to a final judgment, entitling Delaware to its allowed claim.

Delaware has carried its initial summary judgment burden, demonstrating that its claim is allowed based on the Plan's treatment of its claim. The burden then shifts to the Trustee to demonstrate a material issue of fact exists. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24.

*Equitable Subordination*

The bulk of the Trustee's argument focuses on Platinum's interest in Delaware's claim, and urges the Court to consider the consequences of allowing Platinum to benefit from its alleged fraud. (*See* ECF No. 1783 at 3–8). The Trustee purports that the Court's power to equitably subordinate Platinum's interest in Delaware's claim is adequate grounds to "temporarily disallow [Delaware's] claim." (ECF No. 1783 at 5).

11 U.S.C. § 510(c)(1) allows a court to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." The proponent seeking to establish equitable subordination must satisfy three conditions: (i) the claimant must have engaged in some type of inequitable conduct, (ii) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (iii) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977).

The Trustee asserts several allegations against Platinum that, if taken as true, would satisfy the standard for equitable subordination cited in *Mobile Steel*. *Id*. However, the Trustee fails to allege that Delaware caused any inequitable conduct or injury to other creditors. The Trustee states: "if Delaware Trust is paid immediately . . . Platinum will, in effect, receive the benefit of its fraudulent scheme." (ECF No. 1783 at 5). Although the Trustee alleges that Delaware is effectively a conduit through which Platinum benefits from its own alleged inequitable conduct, this fails to meet the standard of equitable subordination. The Trustee fails to allege that Delaware itself committed some sort of inequitable conduct worthy of equitable subordination. Accordingly, based on the Trustee's allegations levied solely against Platinum, the Court may not authorize the Trustee's objection to Delaware's allowed claim confirmed in the Plan.

Similarly, the Trustee asserts that the Court should allow its objection because "provisions in the Plan . . . preserve [the Trustee's] right to seek equitable subordination against Platinum." (ECF No. 1783 at 6). This remains an unconvincing argument because the Trustee focuses on his preservation of claims against Platinum rather than his rights against Delaware. Assuming that the Trustee provided notice adequate to preserve his right to object to Platinum's

interest, the Trustee fails to demonstrate how this action may be imputed to halt Delaware's allowed claim under the Plan. The Trustee does not demonstrate how the right to object to Delaware's allowed claim was preserved.

The Trustee echoed a consistent theme throughout his arguments—allowing Delaware's claim allows Platinum to benefit from its alleged fraud. (*See generally* ECF No. 1783). The Trustee believes that Platinum has engaged in inequitable conduct and equitable subordination is the appropriate remedy. (ECF No. 1783 at 5). Yet the Trustee's only proposal to effectuate this relief seeks to take action against Delaware, the holder of an allowed claim, without alleging any inequitable conduct on Delaware's part.

The Court takes no position on whether Platinum engaged in fraud or inequitable conduct as the Trustee suggests. Yet, it is clear that the Trustee cannot use Delaware's allowed claim as a ladder to reach Platinum's interest without alleging any misconduct on Delaware's part. In this opinion, the Court does not circumscribe remedies against Platinum. The Trustee may have other available remedies at his disposal to take action directly against Platinum rather than Delaware, such as garnishing distributions from Delaware to Platinum. The Court is aware that proceedings in other courts may preclude a garnishment remedy. Nevertheless, the Trustee has failed to raise a genuine issue of material fact regarding Delaware's right to its allowed claim. Accordingly, Delaware's motion for summary judgment is granted.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **February 12, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE