

ENTERED
11/21/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| BLACK ELK ENERGY OFFSHORE § | CASE NO: 15-34287 |
| OPERATIONS, LLC, *et al* § | |
|    Debtor(s) § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

Black Elk Energy Offshore Operations, LLC ("Black Elk") filed chapter 11 bankruptcy on August 11, 2015. Black Elk Energy Employee Incentive, LLC ("BEEEI"); Black Elk Management, LLC ("BEM"), and Black Elk Energy, LLC ("BEE")[1] each filed a proof of claim in Black Elk's bankruptcy case, asserting a right to payment arising from tax distributions allegedly owed to Member-Owners of Black Elk under its Operating Agreements. (ECF No. 1564 at 2). Richard Schmidt, Trustee of the Black Elk Litigation Trust, filed a motion for summary judgment to disallow these three claims or alternatively declare them subject to mandatory subordination under 11 U.S.C. § 510(b).

The Trustee's motion for summary judgment is granted.

## Background

Black Elk was founded in 2007 and based its business model on producing oil and gas from abandoned oil wells that other operators ignored. (ECF No. 1783 at 3). The 2008 financial crisis and a rapid decline in oil prices led to financial difficulty for Black Elk. (ECF No. 1783 at 3).

Despite obtaining some financing through the issuance of Senior Secured Notes and equity interest, oil prices remained low and Black Elk continued struggling with capital, leading

---

[1] These entities are collectively referred to as the "Claimants."

Black Elk to attempt to sell some of its assets to Renaissance Offshore, LLC in July 2014. (ECF No. 1805 at 2).

The planned sale of Black Elk's Renaissance assets failed to close, which hastened Black Elk's financial decline until August 11, 2015, when several creditors filed an involuntary chapter 7 bankruptcy petition against Black Elk. (*See* ECF No. 1). At Black Elk's request, the Court granted relief and converted the case to a voluntary case under chapter 11. (*See* ECF No. 69).

As part of the chapter 11 bankruptcy proceeding, the three entities that are the subject of this opinion filed proofs of claim against Black Elk. (ECF No. 1564 at 1–2). Proof of Claim No. 239 was filed by BEE and signed by John Hoffman, asserting a general unsecured claim for $3,480,118.00 for a tax makeup distribution. (*See* Proof of Claim No. 239 at 3, 5). BEM filed Proof of Claim No. 218, which asserted a general unsecured claim for $4,633,887.00. (*See* Proof of Claim No. 218 at 3, 5). BEEEI filed Proof of Claim No. 217, which asserted a general unsecured claim for $9,994,345.99. (*See* Proof of Claim No. 217 at 3, 5). Each proof of claim asserts a similar right to payment which stems from Black Elk's Operating Agreement. (ECF No. 1564 at 2). The Claimants purport that Section 11.1(b) of Black Elk's Operating Agreement contains a tax makeup provision, which requires that Black Elk provide each Member-Owner of the LLC with a distribution based on their federal and state income tax liabilities. (ECF No. 1564 at 2). The relevant provisions of Section 11.1 are reproduced below:

(a) The Board shall have sole discretion regarding the amounts and timing of Distributions to Members, in each case subject to the retention and establishment of reserves of, or payment to third parties of, such funds as it deems necessary with respect to the reasonable business needs of the Company which shall include the payment or the making of provision for the payment when due of the Company's obligations, including the payment of any management or administrative fees and expenses or any other obligations. Notwithstanding the foregoing, other than as required by Section 11.1(b) below, the Company shall not make any Distributions until all obligations of the Company under the Platinum Credit Agreement have been paid in full.

> (b) Without limiting the generality of the foregoing, available cash of the Company, if any, shall be distributed to the Members on a quarterly basis in an amount sufficient to cause each Member to receive a distribution equal to the highest combined marginal federal and state income tax rates applicable to individuals residing in New York, New York multiplied by its respective share of the net taxable income of the Company reduced by prior losses (and computed without taking into account any special allocations of income pursuant to Section 704(c) of the Code), with payments with respect to the first, second, third, and fourth quarters of each calendar year to be made on or before April 10, June 10, and September 10 of such calendar year and January 10 of the following calendar year, respectively, and with the amounts distributed based upon the Tax Matters Partner's estimate of the Company's taxable income for the current period and with distributions for subsequent periods being adjusted based upon actual results; provided that it is understood that any Member may waive its right to receive distributions under this Section 11.1(b); provided, further, that distributions under this Section 11.1(b) shall be taken into account as advances against amounts to be distributed to the Members receiving such distributions (and shall be credited against future distributions to such Members) (such Distributions, "Tax Distributions"). Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any Distribution if such Distribution would violate the BOC or other applicable law[.]

(ECF No. 1564-1 at 36).

The Trustee filed an objection to these three proofs of claim on July 8, 2017, after the claim objection deadline had passed. The Court held a hearing on June 28, 2017, and deemed the Trustee's objections untimely filed under Black Elk's confirmed Plan of Liquidation. (ECF No. 1635). In response, the Claimants filed a motion in support of their claims urging the Court to allow their claims in their full amount due to the Trustee's failure to timely object. (ECF No. 1564 at 1). On the Trustee's motion, the Court reconsidered its ruling and allowed the Trustee to late file claim objections. (ECF No. 1784). On August 27, 2018, the Trustee filed a motion for summary judgment, seeking disallowance of these three claims against Black Elk, or alternatively, subordination under 11 U.S.C. § 510(b). (ECF No. 1914 at 1–2). No response was filed to the Trustee's summary judgment motion and the Court took the matter under advisement on September 24, 2018.

**Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v.*

*State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326

(1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

The Trustee argues that the three claims at issue should be disallowed because Section 11.1(a) of the Operating Agreement allows discretionary, rather than mandatory, distributions to members.  Allowing the distributions would violate the Texas Business Organizations Code.  (ECF No. 1914 at 6).

### *Discretionary Distribution*

The Trustee's argument focuses on a "claim" as an "enforceable right to payment" from the debtor.  (ECF No. 1914 at 7).  The Trustee argues that Black Elk's Operating Agreement provides the Board with "sole discretion regarding the amounts and timing of Distributions to Members" and given the discretionary nature of these distributions, no enforceable obligation exists to allow these claims.  (ECF No. 1914 at 7).

On one hand, the Trustee's argument comports with the language in Black Elk's Operating Agreement; yet, requiring that a claim be an "enforceable obligation" fails to follow the broad definition of a "claim" in the Bankruptcy Code.  11 U.S.C. § 101(5).  A claim is defined as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured." *Id.* The proofs of claim submitted are based on the Claimants' right to reimbursement arising from the Operating Agreement for taxes paid. (*See* Proof of Claim Nos. 217, 218, 239). Despite being discretionary in nature, these reimbursements seem to fall within the definition of a claim as a right to payment regardless of its contingency, liquidation, or maturity. § 101(5)(A).

The Trustee's view that a claim must be founded on an "enforceable obligation" is based on the Fifth Circuit's opinion in *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 525 (5th Cir. 2004). In *Carreri*, the Fifth Circuit examined whether "Rights Documents" asserted by a creditor created a claim or an equity interest. *Id.* The Fifth Circuit held that if the "Rights Documents" compelled the debtor to redeem the creditor's stocks it fell within the definition of a claim; however, if the payment was discretionary, the creditor held an equity interest which is outside the definition of a "right to payment" in § 101(5)(A). *Id.* at 524–25. The Fifth Circuit recognized that "one document can give rise to independent equity interest and claim rights . . . if the payment obligation is guaranteed at specified intervals or at a specific time or event." *Id*. at 525. However, the Fifth Circuit ultimately held that no independent right to payment existed in *Carreri*, because the creditor's redemption right was discretionary (based on the presence of adequate funding) rather than mandatory. *Id.*

In this case, Section 11.1(b) provides Members with a distribution on a "quarterly basis in an amount sufficient to cause each Member to receive a distribution equal to the highest combined marginal federal and state income tax rates." (ECF No. 1564-1 at 36). In isolation, this appears to be mandatory. However, the Operating Agreement also conditions these distributions to Members on Black Elk having "available cash of the Company" and gave the Board discretion regarding "amounts and timing of Distributions to Members." (ECF No. 1564-

1 at 36). The conditioning of the tax distributions on the company having available cash in Section 11.1(b) and at the Board's discretion in Section 11.1(a) parallel the creditor's equity interest the Fifth Circuit examined in *Carreri*, 393 F.3d at 525. Similar to *Carreri*, the contingencies in the Claimants' proofs of claim do not invoke an independent right to payment to the creditors from Black Elk that satisfies a claim under the bankruptcy code. Accordingly, the Trustee's motion for summary judgment is granted with respect to the proofs of claim asserted by the Claimants.

*Mandatory Subordination*

Alternatively, the Trustee argues that even if a valid claim had existed in this case, the purported claims against Black Elk are subject to mandatory subordination under 11 U.S.C. § 510(b). The Trustee argues that the tax reimbursements that form the basis of the proofs of claim are "'causally linked' to the [Claimants'] status as members of [Black Elk]." (ECF No. 1914 at 11).

The goal of 11 U.S.C. § 510(b) is to enforce the tenant of bankruptcy law, which holds that creditors are entitled to payment before shareholders. *In re Seaquest Diving, LP*, 579 F.3d 411, 417 (5th Cir. 2009). Section 510(b) states:

> A claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security.

11 U.S.C. § 510(b). According to the plain text of the statute, three requirements are necessary for subordination: (i) a valid claim, (ii) a security of the debtor, and (iii) reimbursement or contribution on account of such a claim. *See In re Seaquest Diving*, 579 F.3d at 418; § 510(b).

Because the Claimants' proofs of claim do not invoke a mandatory right to payment, the Trustee's argument that the claims presented are subject to mandatory subordination is moot.

## Conclusion

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **November 21, 2018.**

                                                              Marvin Isgur
                               UNITED STATES BANKRUPTCY JUDGE