**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/30/2019

| | | |
|---|---|---|
| **IN RE:** | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **CASE NO: 15-34287** |
| **OPERATIONS, LLC,** *et al* | § | |
| Debtors | § | |
| | § | **CHAPTER  11** |
| | § | |
| **RICHARD S. SCHMIDT** | § | |
| Plaintiff | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-03412** |
| | § | |
| **THE GRAND LTD** | § | |
| Defendant | § | |

## MEMORANDUM OPINION

This dispute arose from a series of three-party transactions between Black Elk Energy Offshore Operations, LLC; The Grand, Ltd.; and Freedom Well Services, LLC ("FWS") in 2015. The net result of these transactions was the payment of $700,000.00 from Black Elk to The Grand.  However, rather than satisfy Black Elk's debts, these payments were credited to invoices FWS owed The Grand.  In return for these payments, Black Elk received a dollar-for-dollar reduction in indebtedness that Black Elk owed FWS.

Richard Schmidt, Trustee of the Black Elk Litigation Trust, initiated this adversary proceeding to recover these payments made to The Grand by Black Elk.  (ECF No. 1 at 1–2). The Trustee's complaint alleges three causes of action against The Grand:

- Payments Black Elk made to The Grand constitute either preferential transfers under 11 U.S.C. § 547(b) or fraudulent transfers under 11 U.S.C. § 548(a)(1)(B).

- The Grand is liable for these purported transfers under 11 U.S.C. § 550.

- The Court should disallow any claim The Grand has asserted against Black Elk.

(ECF No. 1 at 2).

1 / 23

The Grand disputes the Trustee's allegations, arguing that the payments in question fail to satisfy the Bankruptcy Code's requirements for preferential and fraudulent transfers.  (ECF No. 35 at 9–17).  Alternatively, The Grand asserts that the payments in question are subject to the new value defense in 11 U.S.C. § 547(c)(4).  (ECF No. 35 at 17).  The parties filed cross motions for summary judgment.  (*See* ECF Nos. 32 and 35).

The Court:

- Dismisses the Grand's motion for mandatory joinder and dismissal under Federal Rule of Bankruptcy Procedure 7019;

- Issues a $700,000.00 money judgment in favor of the Trustee and against The Grand; and

- Disallows any claims by The Grand against the Estate; and

- Denies all other relief.

## **Background**

### *The Parties*

Black Elk was founded in 2007 and based its business model on producing oil and gas from abandoned oil wells that other operators ignored.  (Case No. 15-34287; ECF No. 1783 at 3). The 2008 financial crisis and a rapid decline in oil prices led to financial difficulty for Black Elk. (Case No. 15-34287; ECF No. 1783 at 3).  Ultimately, Black Elk succumbed to its financial struggles on August 11, 2015, when several creditors filed an involuntary chapter 7 bankruptcy petition against Black Elk.  (Case No. 15-34287; ECF No. 1).  At Black Elk's request, the Court granted relief and the case was converted to chapter 11.  (Case No. 15-34287; ECF No. 69).

Freedom Well Services, LLC ("FWS") is an affiliate of Black Elk, which was founded in April 2011 by former Black Elk officers.  (Black Elk Form 10 Q, September 30, 2012).  FWS

performed decommissioning, plugging, and abandonment work on offshore wells.  (Black Elk Form 10 Q, September 30, 2012).

The Grand provides support vessels to the offshore oil and gas industry.  (ECF No. 35 at 1).  The Grand's fleet consists of eight barges and lift boats, which are equipped with cranes to assist offshore operations such as "well maintenance, decommissioning, and construction." (ECF No. 35 at 1).  The Grand's boats also have living quarters that provide its crew and other contractors with access to amenities while working offshore.  (ECF No. 35 at 1).

*Contractual Obligations Between the Parties*

The present dispute between the Trustee and The Grand arose from the intertwined contractual relationships among these three parties.  Both Black Elk and FWS independently contracted for the use of The Grand's vessels to perform offshore work.  (ECF No. 35 at 2). After the vessels performed the requisite work and returned to port, The Grand issued invoices to the contracting party to collect payment for services provided.  (ECF No. 35 at 2).

From November 2014 to July 2015, The Grand performed offshore support work for Black Elk.  (ECF No. 35 at 2).  In December 2014, The Grand issued seven invoices to Black Elk for a portion of work performed that totaled $100,000.00.  (ECF No. 30 at 4).

The Grand also contracted to provide FWS with lift boats between February and April 2015 to assist with FWS's decommissioning work.  (ECF No. 35 at 2).  In March and April 2015, The Grand issued twenty-nine invoices to FWS, which totaled $700,000.00 in requested payments.  (ECF No. 30 at 5–7).

A contractual relationship also existed between Black Elk and FWS, which began prior to Black Elk's bankruptcy case, when FWS performed decommissioning work for Black Elk.  (ECF

No. 30 at 7).   As a result, Black Elk owed separate prepetition debts to FWS for decommissioning work performed and to The Grand for its vessel support.

*Payments to The Grand*

On May 29, 2015, Black Elk paid The Grand $100,000.00.  (ECF No. 30 at 4).  The Grand credited this payment to the balances of the seven invoices issued in December 2014 to Black Elk that totaled $100,000.00.  (ECF No. 30 at 4).

Between June 10 and July 24, 2015, Black Elk remitted three separate payments to The Grand, which totaled $700,000.00.  (ECF No. 30 at 4–5).  However, these payments did not satisfy debts Black Elk owed The Grand.  Rather, each payment was credited towards debts that FWS owed The Grand.  (ECF No. 30 at 7).  The first payment of $100,000.00, which Black Elk paid on June 10, 2015, was credited to six invoices The Grand sent FWS in March 2015.  (ECF No. 30 at 5).  On June 26, 2015, Black Elk sent a second payment of $500,000.00, which The Grand credited to twenty invoices owed by FWS that were issued between March and April 2015.  (ECF No. 30 at 5–6).  Black Elk sent a final payment of $100,000.00 on July 24, 2015.  (ECF No. 30 at 6).  The Grand applied this payment to four invoices sent to FWS in April 2015, which totaled $100,000.00.   (ECF No. 30 at 6–7).  In return for these payments, Black Elk received a dollar-for-dollar reduction in the debt it owed FWS for the decommissioning services FWS performed.  (ECF No. 30 at 7).  The result of these three payments was the simultaneous reduction of (i) $700,000 of debt FWS owed The Grand; and (ii) $700,000 of debt Black Elk owed FWS.

*Trustee Seeks to Recover Black Elk's Payments*

On October 6, 2017, the Trustee filed his complaint, initiating this adversary proceeding.  (ECF No. 1).  The Trustee initially sought to recover all $800,000.00 Black Elk paid The Grand

as avoidable transfers under the Bankruptcy Code.  (ECF No. 1 at 1–2).  The Trustee claims that these payments satisfy the statutory requirements of preferential transfers under 11 U.S.C. § 547(b) or fraudulent transfers under § 548(a)(1)(B).  Recovery is sought under 11 U.S.C. § 550.  (ECF No. 1 at 2).  The Trustee and The Grand filed cross motions for summary judgment on November 30, 2018.  (*See* ECF Nos. 32, 33).

The Grand claims that, as a matter of law, Black Elk's payments are not fraudulent transfers because Black Elk received a reasonably equivalent value for the payments after FWS reduced Black Elk's debt in exchange for the payments Black Elk made to The Grand.  (ECF No. 35 at 11).  Secondly, The Grand asserts that Black Elk's payments are not preferential transfers because: (i) The Grand was not Black Elk's creditor, (ii) the payments did not satisfy an antecedent debt, and (iii) the alleged transfer fails the hypothetical liquidation test.  (ECF No. 35 at 12–17).  Finally, The Grand purports that Black Elk's initial May 29, 2015 payment, which satisfied Black Elk's own debt, is subject to the new value defense in 11 U.S.C. § 547(c)(4).  (ECF No. 35 at 17–18).

The Trustee's motion for summary judgment asserts that the statutory requirements of preferential transfers under § 547(b) are satisfied because the Bankruptcy Code does not distinguish between a direct transferee and the creditor who benefitted from the transfer (in this case, FWS).  (ECF No. 32 at 9–14).  The Trustee's motion also seeks judgment on the recovery of money The Grand received pursuant to § 550.  (ECF No. 32 at 17–18).  Lastly, the Trustee disputes whether The Grand may claim new value as a defense against the avoidance of Black Elk's payments.  (ECF No. 32 at 18–19).

The Trustee's motion for summary judgment abandons his argument that Black Elk's $100,000.00 payment to The Grand on May 29, 2015, may be avoided as a preferential transfer.

(ECF No. 32 at 4). Although the Trustee claims that this payment constitutes a preferential transfer under the Bankruptcy Code, he concedes that the new value defense under § 547(c) applies to the May 2015 payment. (ECF No. 32 at 4).

On January 14, 2019, the Court held a hearing on the cross motions for summary judgment. At the hearing, the parties raised the issue of whether mandatory joinder of FWS was required under the Federal Rules of Civil and Bankruptcy Procedure. The Court requested additional briefing on the issue of mandatory joinder and took the matter under advisement.

## **Jurisdiction**

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## **Analysis**

### *Joinder Under Federal Rule of Civil Procedure 19*

The Grand argues that FWS is a necessary party to this litigation because only FWS may assert affirmative defenses against a portion of the alleged transfers. (ECF No. 39 at 12–13). The Grand also claims that the Trustee's failure to join FWS is so prejudicial to its interests that dismissal of this suit is warranted under Federal Rule of Civil Procedure 19(b). (ECF No. 39 at 14). In the Trustee's view, FWS's joinder is unnecessary because avoidance with respect to initial or intermediate transferees, such as FWS, is not a prerequisite for recovery. (ECF No. 40 at 15). Additionally, the Trustee claims that denying FWS's joinder will not prejudice The Grand because the Trustee is limited to a single satisfaction under 11 U.S.C. § 550(d). (ECF No. 40 at 16).

Federal Rule of Civil Procedure 19(a)(1) applies to bankruptcy proceedings and states that a party must be joined if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)    As a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. BANKR. P. 7019. A determination of whether a party is indispensable is a "highly practical, fact-based endeavor." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986). The burden of establishing that a party is necessary initially rests on the advocate. *Hood v. City of Memphis*, 570 F.3d. 625, 628 (5th Cir. 2009). After "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer-Polster*, 784 F.2d at 1309.

Under Rule 19(a)(1)(A) and (B)(i) FWS's joinder is not required in this adversary proceeding. The stipulated facts indicate that Black Elk transferred $700,000.00 to The Grand. (ECF No. 30 at 4–5). The Trustee's complaint seeks to recover this $700,000.00 as an avoidable preference. (ECF No. 1 at 1–2). As a result, this dispute focuses solely on Black Elk and The Grand. The Grand does not allege that FWS controls any portion of the money the Trustee seeks to recover, nor does FWS claim any right to the $700,000.00 in question. Further, because FWS has no interest in this litigation, this litigation presents no threat of collateral estoppel or res judicata. Accordingly, the Court may provide complete relief to the parties without joinder.

FWS has no interest that would be impeded by a final verdict in this suit.  *See* FED. R. CIV. P. 19(a)(1)(A), (B)(i).

However, The Grand claims that FWS's joinder is required under Rule 19(a)(1)(B)(ii) because FWS may assert new value defenses against the purported transfers, reducing The Grand's exposure to "double multiple, or otherwise inconsistent obligations."  (ECF No. 39 at 14).

At the outset, Rule 19(a)(1)(B) requires that the allegedly necessary party "claims an interest relating to the subject of the action."  Case law distinguishes between a legally protected interest, which supports joinder under Rule 19, and a financial interest, which does not.  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005).  As discussed above, FWS bears no liability for the purported $700,000.00 transfer made from Black Elk to The Grand.  Additionally, The Grand's pleadings fail to identify exactly what these purported defenses are and how they will reduce The Grand's liability in this suit.  At best, The Grand states that it "lacks information necessary to assert defenses on [FWS's] behalf."  (ECF No. 39 at 3).  This fails to carry the burden of demonstrating that FWS is a necessary party to this litigation or that FWS has a legally protected interest in this suit, weighing against joinder.

Even if the Court accepts the validity of FWS's defenses as The Grand suggests, the prejudice The Grand alleges is distinguishable from the harm encompassed by Rule 19.  The Fifth Circuit has held that the purpose of Rule 19 is to prevent "a double or otherwise inconsistent liability."  *Pulitzer-Polster,* 784 F.2d at 1312.  In *Pulitzer-Polster*, a family commenced state court litigation against a corporation's directors and officers, alleging mismanagement.  *Id.* at 1307.  An individual family member later filed a separate suit against an individual officer in federal court; however, that suit was dismissed under Rule 19 because it was

duplicative of the state court suit. *Id.* The Fifth Circuit affirmed the dismissal, holding that the federal suit subjected the officer to potential liability for the "same alleged misconduct causing the same harm" as the state court suit, while the plaintiff could reap the benefit of damages in the state court suit and a second recovery against the officer individually. *Id.* at 1312.

The facts in this suit are distinguishable from those in *Pulitzer-Polster*. The Grand alleges that it is materially harmed absent the ability of FWS to assert its new value defenses in this litigation. (ECF No. 39 at 13). However, the *harm* alleged differs from the "*double or otherwise inconsistent liability*" that justifies joinder. *Pulitzer-Polster,* 784 F.2d at 1312 *(*emphasis added). The Trustee seeks to recover the alleged transfers in this suit from The Grand. There is no second suit or party who seeks to hold The Grand liable for these same payments from Black Elk. The Grand's pleadings reflect this, acknowledging that the Trustee is "only entitled to one recovery of each of the [t]ransfers in question." (ECF No. 39 at 12). While The Grand may bear greater liability in this single suit absent FWS's participation, this fact alone fails to satisfy the requirements of necessary joinder under Rule 19(a)(1)(B)(ii).

The Grand's joinder motion is denied.

*Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could

affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).  Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

*Avoidable Preference*

The parties first dispute whether the transfer from Black Elk to The Grand satisfies the statutory requirements of § 547(b).  To avoid a transfer from Black Elk as a preference, the Trustee must demonstrate the transfers in question were:

(1) to or for the benefit of a creditor;

      (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

      (3) made while the debtor was insolvent;

      (4) made—

          (A) on or within 90 days before the date of the filing of the petition; or

          (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

      (5) that enables such creditor to receive more than such creditor would receive if—

          (A) the case were a case under chapter 7 of this title;

          (B) the transfer had not been made; and

          (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

§ 547(b).  While The Grand concedes that the alleged transfer occurred within 90 days of the petition date while Black Elk was insolvent, it claims that the payment from Black Elk fails to satisfy the remaining three elements of § 547(b).  (ECF No. 35 at 12).

      The Grand first disputes whether Black Elk's payments to The Grand satisfy § 547(b)(1). The Grand alleges that the payments to FWS were not made "to or for the benefit of The Grand as a creditor of [Black Elk]."  In support of its assertion, The Grand cites *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.)*, 138 B.R. 831 (Bankr. N.D. Tex. 1992).  The Grand claims that similar to *Southmark*, § 547(b)(1) should be narrowly interpreted. The Grand claims that to benefit from a preferential transfer, a creditor must have a claim to the purported transfer.  (ECF No. 35 at 12).  The Trustee responds with a broader interpretation of § 547(b)(1), claiming that § 547(b)(1) is satisfied because the payments in question benefitted FWS, who was Black Elk's creditor.  (ECF No. 36 at 5).

In *Southmark*, a corporation's subsidiary offered certain promissory notes as collateral for a $2,089,404.00 loan from the bank. *Id.* at 832. The subsidiary and bank entered into a security agreement, which required that the subsidiary repurchase the notes if they were in default for more than sixty days and that the corporation guarantee the subsidiary's debt to the bank. *Id.* Two years later, the corporation transferred $221,708.00 to the bank under the guarantee to repurchase defaulted notes. *Id.* Six months after the transfer, the corporation filed chapter 11 bankruptcy and sought to recover the $221,708.00 paid to the bank as an avoidable preference under § 547(b). *Id.* at 833. The corporation alleged that its subsidiary was a creditor based on intercompany obligations of $4,267,789.40 the corporation owed its subsidiary, which were unrelated to the bank loan and guarantee. *Id.* at 833–34.

The bankruptcy court rejected the corporation's view of "a creditor" in light of § 547(b) read as a whole. *Id.* at 834. Specifically, the requirement that the alleged transfer is made on account of an antecedent debt in § 547(b)(2) required "liability on a claim." *Id.* While the corporation made the transfer to the bank pursuant to its obligations as guarantor of the security agreement, no liability existed between the corporation and its subsidiary under the security agreement. *Id.* As a result, based solely on the intercompany transfers, the transfer was not made "on account of an antecedent debt" owed by the corporation to its subsidiary. *Id.*

The Grand argues that the *Southmark's* holding applies to the alleged transfer in this dispute. (ECF No. 35 at 12). According to The Grand, Black Elk's payments were credited towards FWS's invoices rather than Black Elk's. (ECF No. 35 at 12). Thus, The Grand alleges it was not Black Elk's creditor under § 547(b)(1) because The Grand had no claim against Black Elk for the payments in question. (ECF No. 35 at 12–13).

Although The Grand relies on *Southmark*, the facts in *Southmark* are wholly distinguishable from this dispute. In *Southmark,* the corporation was directly liable to the bank for its subsidiary's debts. 138 B.R. at 832. Although the corporation had liability to its subsidiary, the transfer was not made on account of the debt to the affiliate. *Id.* Instead, the transfer was made because of the direct liability of the corporation to the bank under the gurantee. *Id.* In the present case, the Black Elk, as the transferor had no direct liability to the The Grand, as transferee. However, Black Elk did have direct liability to FWS. Black Elk's payment was made because of the debt it owed FWS, and not because of any liability owed to The Grand. Indeed, the specific holding in *Southmark* was that "Southmark's transfer to [the transferee] was not made for or on account of its liability to [its subsidiary]." *Southmark* at 834.

Further, setting aside the factual differences in *Southmark*, Section 547(b)(1) is broadly written to allow for avoidance of transfers "to or for the benefit of a creditor." *See Southmark Corp. v. Schulte, Roth, & Zabel, (In re Southmark Corp.)*, 88 F.3d 311, 318 (5th Cir. 1996) (holding that no statutory difference existed between a "debt" and a "claim" under the "broad statutory language of the preference statute"). This broad reading is supported by the presence of the disjunctive "or," which allows for a preference whether or not a creditor benefits from the alleged transfer. § 547(b)(1). Similarly, § 547(b)(1) refers to "a creditor," which implies that any party within the definition of "creditor" in 11 U.S.C. § 101(10) may be liable for the alleged preference. Had Congress intended for a narrower definition to apply, the statute would have indicated that a preference may apply only to "the creditor who received the transfer" or "the benefitting creditor." § 547(b).

A broad interpretation is further reinforced by the statutory goals of § 547(b). Circuits agree that preference actions prevent creditors from rushing to seize a debtor's assets prior to the

petition date and ensuring fair and equal treatment among all creditors within a given class. *See Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 227 (5th Cir. 1988); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989); *Stoebner v. San Diego Gas & Elec. Co. (In re LGI Energy Sols.)*, 746 F.3d 350, 353 (8th Cir. 2014). A narrow interpretation of "a creditor" in § 547(b)(1) runs contrary to these statutory goals and to the plain language of the statute.

In this case, the parties have stipulated that FWS was Black Elk's creditor when the transfers were made. FWS had provided Black Elk with goods and services, which Black Elk was obligated to pay for. (ECF No. 30 at 7). As a result, FWS held a claim against Black Elk prior to the petition date, falling within the Bankruptcy Code's definition of "a creditor." § 101(10). The transfer to The Grand extinguished debts FWS owed The Grand. (ECF No. 30 at 7). This satisfies § 547(b)(1)'s requirement that the alleged preference is transferred "to or for the benefit of a creditor."

While the bankruptcy court in *Southmark* held that § 547(b)(1) and (2) must be read together, that application of the statute was a product of the facts of that case. 138 B.R. at 834. However, the Court finds no such link between the first two elements of § 547(b) in the statutory text. In fact, each provision employs non-specific language indicating their independence such as "a creditor" in § 547(b)(1) and "an antecedent debt," and "such transfer" in § 547(b)(2). Section 547(b)(2) requires that an avoidable preference be "for or on account of an antecedent debt owed by the debtor before such transfer was made." The statutory text is broad and non-specific, encompassing "an antecedent debt owed by the debtor."

The Grand maintains that even if the reduction in Black Elk's debt to FWS is considered, an antecedent debt does not exist because the transfer to The Grand did not reciprocally satisfy

debts The Grand owed Black Elk.   (ECF No. 35 at 15).   However, in *Southmark*, the intercompany liability bore no connection to the alleged transfer from the debtor, leading the bankruptcy court to hold that "[a]n 'antecedent debt owed by the debtor' cannot be *any* antecedent debt."   138 B.R. at 834.   In this case, the payment to The Grand simultaneously reduced the debts of two parties: FWS's debt to The Grand, and Black Elk's debt to FWS, distinguishing it from the guarantee in *Southmark*.  (ECF No. 30 at 7).   Accordingly, the transfers from Black Elk to The Grand satisfy the requirement of "an antecedent debt owed by the debtor" under § 547(b)(2).

The Grand argues that this interpretation of § 547(b) leads to "absurd results" whereby "one could sue literally any creditor to avoid a transfer made 'for the benefit of' another creditor."  (ECF No. 37 at 4).   However, The Grand's view is a step removed from the realities of this transaction.   The Grand is not "any creditor" in this transaction as the recipient of $700,000.00 in payments.   Importantly, The Grand explicitly agreed to credit the payments to debts FWS owed rather than those Black Elk owed.   (ECF No. 35 at 6).   The Grand was not a stranger to the transaction.   On these facts, absurd results will not be promoted.

The final preference element at issue in this dispute is the hypothetical liquidation test in § 547(b)(5).   The Grand claims that this element is not satisfied because Black Elk's payments failed to reduce Black Elk's liability to The Grand.  (ECF No. 35 at 17).   Based on this liability, The Grand believes it would receive the same distribution for its claim against Black Elk as similarly situated creditors.  (ECF No. 35 at 17).   The Trustee opposes this view, arguing that § 547(b)(5) should be analyzed with regard to FWS's alleged benefit and debt rather than Black Elk's.

16 / 23

The Grand's view of § 547(b)(5) again fails to align with the statutory language. In contrast to other elements of § 547(b), the hypothetical liquidation test in § 547(b)(5) is specific, referencing "such creditor" and "such debt." This refers to the creditor and antecedent debt mentioned in § 547(b)(1) and (2). The Grand's previous arguments purported that The Grand was not a Black Elk creditor and that no antecedent debt existed because the alleged transfer satisfied FWS's debt rather than the Grand's. (ECF No. 35 at 12, 15). However, in analyzing § 547(b)(5), The Grand shifts the focus of its argument to the debt Black Elk owed The Grand. (ECF No. 35 at 17). The Grand's attempt to switch the referenced transaction is foreclosed by the statutory language, which requires that § 547(b)(5) examine "such creditor" and "such debt." The Grand cannot simultaneously argue that FWS is the creditor owed an antecedent debt in § 547(b)(1) and (2) and then pivot its argument to the debt Black Elk owes The Grand under § 547(b)(5). The statutory text requires that the Court examine whether *FWS rather than the Grand* would receive a greater percentage in a hypothetical liquidation.

To perform the hypothetical liquidation test, the Court must assume that the creditor receives the value of the alleged transfer plus any distribution they would be entitled to in a chapter 7 case. *Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1421 (9th Cir. 1985). Practically, if unsecured creditors receive less than a 100% distribution in a chapter 7, any additional payment received through an alleged transfer necessarily enables the creditor to receive more than it would in a liquidation if the payment was not made. *T.B. Westex Foods, Inc. v. FDIC (In re TB. Westex Foods, Inc.)*, 950 F.2d 1187, 1192 (5th Cir. 1992).

FWS filed a proof of claim for $6,348,633.81 of unsecured debt in Black Elk's bankruptcy case. (*See* Proof of Claim No. 233 at 2). The parties further stipulated that under Black Elk's confirmed plan of liquidation, general unsecured creditors would receive "less than

full value or recovery on account of their allowed claims against [Black Elk's] estate." (ECF No. 30 at 8). It follows that Black Elk's unsecured creditors would also receive less than a 100% distribution in a chapter 7 liquidation. Thus, as an unsecured creditor, the $700,000.00 benefit FWS received from Black Elk's payments, would allow FWS to recover more than it would in a hypothetical liquidation, satisfying § 547(b)(5). *In re T.B. Westex Foods, Inc.*, 950 F.2d at 1192.

The parties dispute whether the Trustee satisfied the elements of a preference under § 547. However, the Trustee demonstrated that the payment in question was made to a creditor, on account of an antecedent debt, and enabled "such creditor" to receive more than they would in a hypothetical liquidation. As a result, the transfer of $700,000.00 paid from Black Elk to The Grand was a preference under § 547.

*New Value Defense*

Although the Trustee has established the elements of a preference, § 547(c)(4) prevents a trustee from avoiding a transfer if the creditor "gave new value to or for the benefit of the debtor." The Bankruptcy Code defines "new value" as "money or money's worth in goods, services, or new credit . . ." § 547(a)(2).

The Trustee and The Grand stipulated that Black Elk's May 29, 2015, $100,000.00 payment to The Grand satisfied Black Elk's own invoices. (ECF No. 30 at 4). The parties also agree that after this payment, The Grand provided Black Elk with $369,136.00 of goods and services. (ECF No. 30 at 8). This falls squarely within the new value defense in § 547(c)(4). While Black Elk transferred money to The Grand, The Grand subsequently provided Black Elk with goods and services, which exceeded the transfer. (ECF No. 30 at 8). As a result of this new value, the Trustee may not avoid Black Elk's May 29, 2015 transfer of $100,000.00 to the Grand.

However, the Trustee's motion for summary judgment also seeks to preclude The Grand from asserting statutory defenses against the avoidance of the $700,000.00 transferred from Black Elk, which satisfied FWS's debts to The Grand. (ECF No. 32 at 18–19). The Grand's motion for summary judgment fails to raise a new value defense to the transfers it received, which satisfied FWS's debt. (ECF No. 35 at 17–18). Yet, The Grand's response claims that the Trustee cannot simultaneously argue that a preference exists under § 547(b) while advocating that the statutory defenses to avoidance under § 547(c)(4) cannot apply. (ECF No. 37 at 8). The Grand purports that if the statute focuses on the harm to the estate from the alleged preferential transfer, the Court must also examine whether any new value benefits the estate. (ECF No. 37 at 8). The Trustee responds that the statutory language of § 547(c)(4) limits the new value defense to the benefitting creditor, which is FWS rather than The Grand in this case. (ECF No. 40 at 2).

Both parties cite the Eighth Circuit's opinion in *Stoebner v. San Diego Gas & Elec. Co. (In re LGI Energy Solutions, Inc.)*, 746 F.3d 350, 356 (8th Cir. 2014) in support of their positions. LGI Energy Solutions consolidated utility bills from service providers into invoices, so its customers could make payments to LGI. *Id.* at 352. LGI would then distribute these payments to individual utility companies. *Id.* While LGI contracted with utility customers, it had no contractual obligations with utility service providers. *Id.*

Under this arrangement, LGI made payments to two California utility companies in November 2008, which continued to provide utility services to LGI's customers. *Id.* LGI invoiced those services, and the customers then paid LGI an additional $297,000.00. *Id.* By then, LGI was in financial trouble and never remitted its customers' payments to the utility companies. *Id.* at 353. In February 2009, an involuntary bankruptcy petition was filed against LGI, which placed these transactions within the ninety-day preference window in § 547. *Id.* at

353.   The Chapter 7 Trustee sued to recover the November payments LGI made to the utility companies as preferential transfers.   *Id.* at 353–54.   The utility companies argued that any preference should be reduced by the customers' payment to LGI under the new value defense in § 547(c)(4).   *Id.*   The Trustee argued that the statutory use of "such customer" required that any new value come from the utility companies who received the alleged preference and not LGI's customers.   *Id.* at 354.

The Eighth Circuit held that the Trustee's view of "such creditor" was overly restrictive in the context of the case.   *Id.* at 356.   The preferential payments from LGI benefitted not only the utility companies who received the money, but also LGI's customers, whose debts to the utility companies were paid.   *Id.*   The Eighth Circuit also ruled that the equities of the transaction favored applying the new value defense in § 547(c)(4) to the $270,000.00 LGI's customers paid after the alleged transfer.   *Id.* at 353–54.   Allowing the Trustee to recover the preferential payments to the utility companies would enrich the bankruptcy estate while simultaneously leaving LGI's customers liable for debts they had already paid.   *Id.*

Although both parties in this dispute have heavily relied on *LGI Energy* to support their positions, the facts in the Eighth Circuit's decision are distinguishable from the present dispute. In *LGI Energy*, the benefitting creditors were LGI's customers, whose debts to the utility companies were satisfied by the transfer.   *Id.* at 353.   The debtor, LGI, was effectively a conduit for the payment, which received no benefit from the alleged preferential transfer.

In this case, the alleged transfers were sent from Black Elk to The Grand, which simultaneously reduced FWS's debt to the Grand, and Black Elk's debt to FWS.   However, these transfers did not alter Black Elk's indebtedness to The Grand.   (ECF No. 30 at 6–7).   The benefitting creditor in this transaction was FWS, whose debt to The Grand was reduced by the

transfer as well as Black Elk, which reduced the debts it owed FWS.  (ECF No. 30 at 6–7). Unlike the debtor in *LGI Energy*, in this case, it was The Grand, which served as a conduit for the payment and whose creditor relationship with the debtor, Black Elk, was unaffected by the preferential transfer.

Accordingly, allowing The Grand to assert a new value defense, given the fact that FWS was the benefitting creditor, fails to align with plain text of the statute.  Section 547(c)(4) states that a trustee may not avoid a transfer "to or for the *benefit of a creditor*, to the extent that, after such transfer, *such creditor* gave new value to or for the benefit of the debtor."  As stated above, the benefitting creditor in this case is FWS, and the statutory language requires that "such creditor" provide new value, which only FWS may assert in this case as the benefitting creditor.

The equities of the case also caution against allowing The Grand to assert a new value defense.  In *LGI Energy*, the Eighth Circuit specifically noted the prejudice to LGI's customers, who stood to lose credit for their paid invoices, while the bankruptcy estate would obtain a double recovery after it recovered the payment while discharging its customers' debts.  *In re LGI Energy Solutions, Inc.*, 746 F.3d at 353–54.   In this case, recovery of the $700,000.00 preferential payments to The Grand would not produce the same inequitable results.  After the recovery of the preferential transfers, FWS would remain liable for the debts it owed The Grand while Black Elk would remain liable to FWS for its own debts.  Importantly, the debts Black Elk owed The Grand would remain unaffected after the preferences were recovered.  The parties would return to their relative positions and debts owed before the preferential payments were made, which aligns with the statutory goals of the Bankruptcy Code to promote "equality of distribution among creditors."  *Id.* at 353.  Accordingly, The Grand may not assert a § 547(c)(4) defense against the alleged preferential transfers.

*Recovery of the Preference under 11 U.S.C. § 550*

The Trustee's motion for summary judgment next seeks to recover the avoided preference from The Grand under 11 U.S.C. § 550. (ECF No. 32 at 17–18). While The Grand's motion and pleadings vigorously contest the application of § 547(b), it largely ignores § 550, beyond claiming that FWS is the responsible party under § 550(a) as the ultimate beneficiary of the transfer. (ECF No. 37 at 5).

Section 550(a)(1) states that the Trustee may recover an avoided transfer, for the benefit of the estate from, "the initial transferee of such transfer or the entity for whose benefit such transfer was made." As with previous sections of the Bankruptcy Code, the plain text of § 550(a)(1) imputes liability on both The Grand, as the initial transferee, and FWS, as the benefitting party. Case law similarly supports The Grand's liability for the transfer under § 550(a)(1). The Fifth Circuit held that an initial transferee is one who receives "dominion and control over funds" directly from the debtor. *See Cullen Center Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1419 (5th Cir. 1997) (quoting *In re Coutee*, 984 F.2d 138, 140–41 (5th Cir. 1993)). Here, it is undisputed that The Grand received $700,000.00 in transfers from Black Elk and exercised full control over the payment, placing it within both the statute and Fifth Circuit's definition of "initial transferee." (ECF No. 30 at 7). Accordingly, the Trustee may recover the $303,864.00 avoided preference from The Grand under § 550(a)(1).

*Fraudulent Transfer*

The Trustee's complaint alleges that the three payments totaling $700,000.00 that Black Elk paid The Grand constitute fraudulent transfers under 11 U.S.C. § 548. (ECF No. 1 at 2). The Grand seeks a judgment declaring that Black Elk's payments cannot be a fraudulent transfer because Black Elk received reasonably equivalent value through the dollar-for-dollar reduction

in debt Black Elk owed FWS because of the transfer.  (ECF No. 35 at 9).  The Trustee's response abandons this argument, agreeing that "reasonably equivalent value was received in exchange for the [FWS] Invoice Payments."  (ECF No. 36 at 12).

Section 548(a)(1)(B)(i) states that a fraudulent transfer may be avoided if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." Given the parties agreement that Black Elk received a dollar-for-dollar reduction in debt on account of the transfer, The Grand has satisfied its burden of demonstrating that the payments in question were not fraudulent transfers under the Bankruptcy Code.  Accordingly, the Trustee's cause of action for a fraudulent transfer is dismissed.

### Conclusion

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **July 30, 2019.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE