

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| BLACK ELK ENERGY OFFSHORE | § | CASE NO: 15-34287 |
| OPERATIONS, LLC, *et al* | § | |
|     Debtors | § | |
| | § | |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION

Black Elk Energy's chapter 11 plan created two trusts for the purpose of winding up the company's affairs. The Liquidation Trust was tasked with plugging and abandoning various oil rigs in the Gulf of Mexico. The Litigation Trust pursued claims against former officers and directors in order to maximize the recovery of Black Elk's creditors. The Trustee filed an untimely motion to extend both Black Elk Trusts. Numerous adverse litigants with the Trusts objected, arguing that the Black Elk Trusts dissolved by their terms in July 2019. For the reasons that follow, dissolution of the Black Elk Trusts was not self-executing. The Trusts remain active. However, because the Trustee's Motion was untimely, extension of the Trusts is presently contrary to the terms of the Trust Agreements.

### BACKGROUND

Founded in 2007, Black Elk Energy Offshore Operations, LLC ("Black Elk") was an oil and gas producer that developed hydrocarbons from abandoned wells that other operators ignored. (ECF No. 1783 at 3). The 2008 financial crisis, followed by declining oil prices, significantly

impaired Black Elk's business operations. (ECF No. 1783 at 3). Moreover, there were significant allegations of irregularity against Black Elk and its affiliates.

On August 11, 2015, four petitioning creditors filed an involuntary bankruptcy petition seeking an order for relief against Black Elk under chapter 7. (ECF No. 1). Black Elk filed its Consent to Order for Relief and filed its Motion to Convert the Involuntary Chapter 7 Case to a Voluntary Chapter 11 Case on August 31, 2015. (ECF Nos. 68, 69). The Court granted those motions and converted the case to chapter 11. (ECF No. 69).

The Court entered an order confirming Black Elk's Third Amended Plan of Liquidation (the "Confirmation Order") on July 14, 2016. (ECF No. 1204). The plan became effective on July 25, 2016 (the "Effective Date"). (ECF No. 1204).

The Confirmation Order established both a Liquidation Trust and a Litigation Trust (collectively, the "Black Elk Trusts") to wrap up Black Elk's financial affairs. (ECF Nos. 1092, 1204). Richard Schmidt was appointed to serve as the Trustee of both Black Elk Trusts. (ECF No. 1204). Since his appointment as Liquidating Trustee, the Trustee has primarily focused on plugging and abandoning work related to over fifty wells formerly owned by Black Elk. The work is ongoing, and performance of the plugging and abandoning obligations has resulted in substantial litigation between the Trustee and post-petition contractors. As Trustee for the Litigation Trust, the Trustee has pursued claims against the recipients of allegedly fraudulent transfers from Black Elk. Completion of the plugging and abandoning work, and resolution the litigation, will determine the funds available for distribution to Black Elk's creditors.

The Trustee filed the present Motion for Entry of an Order Extending Dissolution Deadlines of the Black Elk Litigation Trust and Black Elk Liquidation Trust (the "Motion") on December 3, 2019. (ECF No. 2090). The Motion acknowledged that it was untimely filed, as the Trust Agreements required that motions to extend the dissolution deadlines be filed within the three months prior to the dissolution date. The relevant deadline occurred three years after the Effective Date of Black Elk's plan, July 25, 2019. Numerous post-petition contractors and fraudulent transfer defendants objected to the Motion.

On December 6, 2019, JAB Energy Solutions, LLC ("JAB") filed a response to the Trustee's Motion. (ECF No. 2096). JAB, a creditor of Black Elk, had previously filed a proof of claim for $8,621,325.74 on account of pre-petition decommissioning services on certain wells. (ECF No. 2096 at 2). During Black Elk's bankruptcy case, JAB also performed post-petition abandonment work. (ECF No 2096). JAB and Black Elk resolved the full claim through a series of stipulations. Although JAB does not object to extension of the dissolution deadlines, it asks the Court to condition extension on milestones assuring prompt payment of its claim. (ECF No. 2096 at 2).

On December 17, 2019, Schlomo and Tamat Rechnitz ("the Rechnitz") filed an objection to the Motion. (ECF No. 2106). The Rechnitz' are defendants in an adversary proceeding brought by the Litigation Trust.

Twosons Corp., Fabrice Harari, and Raphael Harari (collectively, "Twosons") filed an objection to the Motion on December 18, 2019. (ECF No. 2108 at 1). Like the Rechnitz', the

Twosons parties are also defendants in an adversary proceeding with the Litigation Trust. (ECF No. 2108 at 2).

On December 18, 2019, Meridian Capital Foundation, the RZH Foundation, the Interlink I Charitable Trust, and the Interlink III Charitable Trust (collectively, the "RZH Charities") moved to join in the various objections to the Motion. (ECF No. 2115). The RZH Charities are defendants in adversary proceeding No. 19-03330. Grand Isle Shipyard, Inc. ("GIS") also moved to join in the objections. (ECF No. 2140).

Beneficiaries of the Black Elk Trusts came forward in support of the Trustee's Motion. Specifically, Delaware Trust Co. filed a response in support of the Motion on January 28, 2020. (ECF No. 2150). Delaware Trust is the successor indenture trustee and collateral agent of Black Elk's senior secured notes. (ECF No. 2150 at 3). As such, Delaware Trust is a beneficiary of both Black Elk Trusts, and entitled to receive Trust distributions on account of its $73,354,284.73 allowed claim. (ECF No. 2150 at 3).

Following extensive briefing, the Court held a hearing on February 10, 2020 and took the matter under advisement.

## JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

## THE PLAN, CONFIRMATION ORDER & TRUST AGREEMENTS

The Trustee's Motion seeks an order extending the Black Elk Trusts to allow the Trustee to complete plugging and abandoning obligations, and continue pursuing claims in both state court

and the bankruptcy court. Various provisions of the Black Elk Plan, Confirmation Order and Trust Agreements are relevant to the questions of whether the Black Elk Trusts automatically dissolved by their terms or whether extension of the Trusts is now permitted.

The Black Elk Trusts were established pursuant to the Black Elk Plan. The Plan described the purpose of the Liquidation Trust as follows:

> The Liquidation Trust shall be established for the general purposes of winding up the Debtor's business, resolving all P&A Obligations associated with the Debtor's operations, and liquidating and distributing the Liquidation Trust's Assets, with no objective to continue or engage in the pursuit of a trade or business other than to: (i) serve as an independent decommissioning agent for the Regulatory Agencies to oversee and administer the decommissioning of certain federal OCS leases and rights-of-way if so requested by the Regulatory Agencies pursuant to the terms of a Decommissioning Trust Agreement that may be separately entered into by the Liquidation Trustee and the United States and (ii) collect and apply any bond proceeds, or other funds that may be transferred to the Liquidation Trust from the Litigation Trust, for the purposes of decommissioning certain federal OCS leases and rights of way as may be requested by the Regulatory Agencies, subject to the conditions and limitations set forth in the Liquidation Trust Agreement and any separate Decommissioning Trust Agreement that may separately be entered into by the Liquidation Trustee and the United States.

(ECF No. 1092-1 at 44). The Plan created the Litigation Trust:

> for the purposes of prosecuting and resolving, in the name of the Debtor and/or the name of the Litigation Trustee, Trust Causes of Action (as defined in the Final DIP Order), to prosecute and resolve objections to Disputed Claims against the Debtor that are payable from the Litigation Trust Asset, and liquidating and distributing its assets, with no objective to continue or engage in the pursuit of a trade or business.

(ECF No. 1092-1 at 40). The Litigation Trust further granted the Trustee "the power and authority to prosecute and resolve, in the name of the Debtor and/or the name of the Litigation Trustee, the Litigation Trust Assets . . . ." (ECF No. 1092-1 at 40).

The two Black Elk Trusts contain nearly identical language concerning dissolution and amendment. Section 8.01 of the Litigation Trust states that dissolution was to occur as follows:

> The Trust shall be dissolved, in accordance with Section 8.02 hereof, no later than the third anniversary of the Effective Date, unless the Bankruptcy Court, upon motion by the Trustee, Litigation Trust Committee, or any party in interest, within the three-month period prior to the third anniversary (or prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.

(ECF No. 2103-1 at 12). The Plan states that "in no event shall the [] Trust[s] be dissolved later than three (3) years from the Effective Date absent Bankruptcy Court approval." (Plan, Arts. VII.D.13, and VII.E.3.j). The Trust Agreements note that in the event of a direct conflict, terms of the Plan and Confirmation order control. (ECF No. 2103-1 at 15). Relevant to dissolution, the Confirmation Order states that the Effective Date of the Black Elk Plan was July 25, 2016.

Section 8.01 of the Trust Agreements states that dissolution shall occur "in accordance with Section 8.02." (ECF No. 2103-1 at 12). Section 8.02, titled "Dissolution Events," reads as follows:

> The Trustee shall be discharged, the Trust shall be dissolved, and the Litigation Trust Beneficial Interests shall be cancelled at such time as (i) the Trustee and Litigation Trust Committee determine that the administration of the Trust is not likely to yield sufficient additional proceeds to justify further pursuing such proceeds; and (ii) all Distributions required to be made by the Trustee under the Plan and this Agreement have been made. Without limiting any other provision of this Agreement regarding termination, the Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Trust and the Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

(ECF No. 2103-1 at 12).

In certain situations, the Trust Agreements permit amendment of their terms. Section 9.01 of the Litigation Trust Agreement states that:

The Trustee, with the prior approval of a majority of the members of the Litigation Trust Committee, may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; provided that such amendments, supplements or waivers shall not adversely affect the Distributions to any Beneficiaries or adversely affect the U.S. federal income status of the Trust as a "liquidating trust"; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Trust as a "liquidating trust." Any substantive provision of this Agreement may be amended or waived by the Trustee, subject to the prior approval of a majority of the members of the Litigation Trust Committee, with the approval of the Bankruptcy Court; provided, however, that no change may be made to this Agreement that would (i) adversely affect (a) the Debtor (absent the Debtor's consent), (b) the Distributions to any of the Beneficiaries, or (c) the U.S. federal income tax status of the Trust as a "liquidating trust" or (ii) expand, add to, or modify the original stated purpose of the Trust. Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## DISCUSSION

The question before the Court is whether the Black Elk Trusts dissolved by their terms on July 25, 2019, the date three years after the Effective Date of the Black Elk Plan. It is undisputed that the Trustee failed to move for an extension of the Black Elk Trusts within the three-month window provided in Section 8.01 of the Trust Agreements. Instead, the Trustee moved to extend the Trusts nearly six months after July 25, 2019. However, a careful reading of the Trust Agreements shows that the dissolution is not self-executing. An act of dissolution was required. No such act has occurred.

A. *Standing*

At the outset, the Court must address standing. The objecting parties are adverse litigants against the Black Elk Trusts. They are not beneficiaries of the Black Elk Trusts. Their arguments fall into three primary categories. First, the objecting parties argue that the Black Elk Trusts dissolved automatically three years after the Effective Date of the Plan. Second, they argue that dissolution of the Trusts eliminated the Trustee's standing to pursue litigation against the objecting parties. Third, the objecting parties resist any amendment or extension of the Black Elk Trusts because continuation would be contrary to the purpose of the Trusts. The objecting parties have standing to raise the first two arguments; they lack standing to assert the third argument because they have no interest in the Black Elk Trusts.

Federal courts do not possess authority to decide claims asserted by a party without standing. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 145 (2011) (noting standing rules are derived from the case-or-controversy limitation on federal jurisdiction under Article III of the Constitution). Standing depends on whether a party has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Gale v. Carnrite*, 559 F.3d 359, 363 (5th Cir. 2009). This Court has previously concluded that "being a defendant in a lawsuit brought by the Trustee, without more," does not make an individual "a party in interest that has a right to be heard on bankruptcy case administration." *In re Miller*, 347 B.R. 48, 52 (Bankr. S.D. Tex. 2006).

8 / 17

The objecting parties have standing to argue that the Trusts dissolved because if the Trusts terminated, the Trustee no longer has standing to pursue litigation against the objecting parties. If the Trustee does not have standing, those actions are moot. *Goldin v. Bartholow*, 166 F.3d 710, 717-18 (5th Cir. 1999) ("When the trust terminates, the trustee no longer has any personal, substantial interest in the outcome of the litigation. His lack of standing would thus render the trust's claims against the appellees moot from the moment of termination."). The personal interest required at the commencement of a case must remain throughout the case. *Id.* (citing *Arizonans For Official English v. Arizona*, 520 U.S. 43 (1997)). "A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation." *Id.* Although raised here in relation to the Trustee's Motion, the objecting parties' argument that the Trusts terminated is effectively an argument that the litigation against the objecting parties is moot. The objecting parties have standing to raise mootness.

On the other hand, the objecting parties do not have standing to argue against amendment of the Trusts or that the Trusts *should* be dissolved. The Court ruled on this issue at the hearing on February 10, 2020. The objecting parties are not beneficiaries of the Trusts and do not have an interest in the administration of the Trusts. Although the objecting parties point to language in Section 8.01 of the Trust Agreements allowing "any party in interest" to move to extend the Trusts, the objecting parties are not parties in interest to the Trusts. They have no pecuniary or property interest in the administration of the Trusts.

Further, the objecting parties will not suffer an injury in fact if the Trusts did not dissolve and are now extended. If the Trusts did not dissolve on July 25, 2019, then the Trusts remain

active. If the Trusts remain active, the Trustee continues to have standing in the litigation against the objecting parties, unless the Court rules that the Trusts should now be dissolved. If the Court approves an extension of the Trusts, the Trustee's standing continues for the extended period. While the objecting parties will benefit from a decision depriving the Trustee of standing, they are not harmed by an extension of the Trusts. From the objecting parties' perspective, extension of the Trusts merely maintains the status quo.

### B. *The Black Elk Trusts did not Dissolve on July 25, 2019*

The text of the Black Elk Trust Agreements states that they "shall be dissolved" three years after the Effective Date of the Black Elk Plan, in accordance with Section 8.02, absent a timely extension of the Trusts. All parties acknowledge that the Trustee's Motion to extend the Black Elk Trusts was untimely. Although the Motion was untimely, and the Trust Agreements may have required an act of dissolution, no party moved to dissolve the Trusts. As such, the Black Elk Trusts remain and the Trustee retains standing to pursue litigation against the objecting parties. Had an interested party moved to dissolve the Black Elk Trusts, the text of the Trust Agreements may have commanded that dissolution occur. However, both the Trustee and the beneficiaries of the Black Elk Trusts believe that extension will further the purposes of the Trusts. While extension would further the purposes of the Trusts, the Court cannot authorize an extension that does not conform with the language of the Trust Agreements.

The parties opposing the motion argue that *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999), mandates a finding that the Black Elk Trusts dissolved on July 25, 2019. At first glance, the facts of *Goldin* appear indistinguishable from the case at hand, but the devil is in the details.

10 / 17

While the facts of *Goldin* are nearly identical, the language of the relevant trust agreements is not. The distinctions warrant a different outcome in this case. Dissolution of the trust in *Goldin* was self-executing; the Black Elk Trusts require acts of dissolution. The Court has not acted to dissolve the Trusts.

In *Goldin*, a liquidating trustee brought an adversary proceeding against the former officers and directors of a chapter 11 debtor. *Id.* The adversary complaint alleged that the officers and directors misappropriated the debtor's assets for personal gain, and sought a declaratory judgment that the officers and directors were not entitled to severance pay. *Id.* at 714. The trustee filed the adversary proceeding on May 5, 1995. Following a withdrawal of the reference, the district court granted summary judgment on most issues in favor of the officers and directors. *Id.* With the trust set to terminate in May 1997, the trustee requested that the bankruptcy court extend the trust. *Id.* The bankruptcy court failed to rule on the trustee's motion. *Id.*

On July 14, 1997, one day before the termination date of the trust, the district court again withdrew the reference and denied the extension request. *Id.* In August 1997, the district court withdrew the entire case from the bankruptcy court and issued a series of final orders which confirmed summary judgment in the officers and directors' favor, allowed their administrative severance claims, and held the trustee personally liable for certain damages. *Id.* The trustee filed a writ of mandamus with the Fifth Circuit, as well as an appeal on the merits. *Id.*

The Fifth Circuit found the trust's termination rendered the appeal moot, and declined to reach the merits of the trustee's appeal. *Id.* at 715 (citing *Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998)). The trust was established in July 1994 and terminated, by its own terms, on

July 15, 1997. *Id.* The trust's purpose was threefold: 1) liquidating and distributing non-cash assets including litigating debtor causes of action; 2) resolving contested claims; and 3) distributing cash from certain contested claim reserves established by the plan. *Id.* at n.1. The trust instrument further stated that the trust "*shall terminate* on the earlier of 1) the third anniversary of the Effective Date or 2) the date as of which substantially all of its assets have been reduced to [c]ash and distributed." *Id.* (emphasis added). The Fifth Circuit found that language was "a clear and express statement that the trust would terminate on the third anniversary of its effective date—i.e. on July 14, 1997," regardless of whether trust assets remained undistributed. *Id.*

The trustee argued that additional language in the termination clause provided an extension mechanism. The provision stated that "[i]f any assets of the [t]rust remain after termination, they shall be deposited with the Clerk of the Bankruptcy Court . . . unless the Trust Board and General Bank Trust Board direct, and the Bankruptcy Court approves, after notice and a hearing, an alternative procedure." *Id.* The Fifth Circuit rejected that argument because any "alternative procedure" approved under that provision plainly dealt with disposition of residual assets *after* termination. *See id.* The provision did not provide a means to delay termination of the trust. The Fifth Circuit further noted that "the establishment of a procedure for distribution of residual assets provides further evidence that the trust was intended to terminate automatically. *Id.*

In short, the Fifth Circuit found the trust instrument unambiguous and held that the trust terminated on July 15, 1997. In response, the trustee argued that Texas' statutory wind up powers allowed him to continue as trustee for a reasonable time, post-termination. *Id.* at 716. The Fifth Circuit noted that while the Texas Property Code provides for wind up powers, Texas law also

explicitly states that the terms of the trust control over conflicting terms of the Property Code. *Id.* (citing Tex. Prop. Code Ann. § 111.002(a)). Wind up powers are specifically subject to the terms of the trust instrument. *Id.* (citing *Kimble v. Baker*, 285 S.W.2d 425, 430 (Tex. Civ. App.—Eastland 1955)). Because the trust instrument in *Goldin* focused on rapid liquidation and distribution, and set out a specific termination date, granting the trustee wind up powers would conflict with the trust's purpose. *Id.* The Circuit further noted that the trust's goals of rapid liquidation and distribution were "largely met" at the time of termination. *Id.* at 717.

Here, the objecting parties argue that *Goldin* conclusively demonstrates that the Black Elk Trusts terminated. That is not the case. As with any trust dispute based on a written instrument, the Fifth Circuit's analysis began with the relevant trust language. *Id.* at 715. The Court interprets trust agreements as it does contracts. *See Askanase v. LivingWell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995). The Black Elk Trusts' dissolution clauses are materially different than the liquidation trust in *Goldin*. In *Goldin*, the trust instrument stated that it "shall terminate" after three years. *Id.* The Fifth Circuit found that language unambiguous and self-executing. *Id.* "Shall terminate" indicates that termination occurs automatically upon the occurrence of a triggering event. *See id.* The triggering event in *Goldin* was the third anniversary of the effective date of the chapter 11 plan. *Id.* The trust itself terminated after that time, and no separate act of termination was required. *See id.*

The Black Elk Trusts "*shall be dissolved*, in accordance with Section 8.02 hereof, no later than the third anniversary of the Effective Date . . . ." (ECF No. 2103-1 at 12 (emphasis added)). Unlike *Goldin*, the words "shall be dissolved" are not self-executing. That phrase indicates that

13 / 17

three years after the Effective Date, the Trusts must be dissolved (if dissolution is in accordance with Section 8.02), not that the Trusts simply dissolve. While the commencement of the dissolution of the Black Elk Trusts may have been required three years after the Effective Date, it is undisputed that neither the Trustee nor any beneficiary acted to obtain the dissolution of the Trusts.

Although the differences between the language of the Black Elk Trusts and the trust instrument in *Goldin* are subtle, the distinctions are critical. 'Shall terminate . . .' unambiguously means that termination occurs after a certain event. 'Shall be dissolved . . ."  unambiguously means that dissolution must commence after a certain event. The Bankruptcy Court's role in dissolution or termination of the Trusts is demonstrated by Section 8.02. Section 8.02 specifically states that "the Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Trust and the Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish." (ECF No. 2103-1 at 12). That language contemplates that termination of the Trusts should occur by motion. It grants the Court the authority to terminate the Trusts and the flexibility to do so in an orderly fashion. Section 8.01 requires that the Trusts "shall be dissolved" in accordance with Section 8.02. The text of Section 8.01 is best understood as requiring a party in interest to file a dissolution motion in the same manner as Section 8.02 requires for termination. No party filed such a motion.

Section 8.01 (the section that sets the three-year time limit at the core of this dispute) requires that the dissolution be undertaken "in accordance with Section 8.02." Section 8.02 of the Litigation Trust sets out two Dissolution Events. First, dissolution is appropriate when the Trustee

and Trust Committee determine that further administration of the Trusts is unlikely to yield sufficient proceeds to justify further pursuit. Second, dissolution is appropriate when all required distributions have been made. Section 8.02 of the Liquidation Trust Agreement contains the same Dissolution Events while adding two more. The additional Dissolution Events for the Liquidation Trust are the return of any remaining government asset to the United States, and the completion of all remaining decommissioning work.

Because the Trusts have not actually dissolved, the Court need not speculate whether dissolution under Section 8.01 is only appropriate when a Dissolution Event of Section 8.02 has occurred. However, the evidentiary record demonstrates that no Dissolution Event has occurred. The Trustee testified that significant work remains to be done in order to maximize the assets of the Black Elk Trusts and to distribute those assets to the beneficiaries. The Trustee further testified that decommissioning work remains uncompleted. Therefore, if dissolution under Section 8.01 is dependent upon the occurrence of a Dissolution Event under Section 8.02, then dissolution would not have been required on July 25, 2019. The overwhelming evidentiary record demonstrates that beneficiaries will be better off if the Trusts are extended. Both the Trustee and Delaware Trust Co., a beneficiary, agree that extension will benefit distributions. The Liquidation Trust has not completed its plugging and abandoning work. The Litigation Trust is the plaintiff in numerous ongoing proceedings. The Court finds that no Dissolution Event under Section 8.02 has occurred. (*See* ECF No. 2117 at 4).

Additionally, when determining whether language is self-executing, courts frequently look to related provisions. For instance, the Third Circuit recently found that the turnover provision of

section 542(a) is not self-executing, in part because Bankruptcy Rule 7001 requires that a debtor seeking turnover must file an adversary proceeding with the bankruptcy court. *See In re Denby-Peterson*, 941 F.3d 115, 131 (3d Cir. 2019) ("True, the turnover provision states: 'shall deliver,' but the question before us is when must a creditor deliver? The answer is when the Bankruptcy Court says so . . . ."). Similarly, here, the dissolution provisions of the Black Elk Trusts must be interpreted "in accordance with Section 8.02." As explained, Section 8.02 sets out multiple dissolution events, none of which has occurred. Section 8.02 also states that a party in interest may move to terminate the Trusts. Similar to *Denby-Peterson*, express language authorizing a party to petition the Court to terminate the Trusts suggests that termination does not occur automatically.

C.  *Current Status*

The Black Elk Trusts have not yet been dissolved. The Trustee remains the Trustee. Although the objecting parties seek dissolution, they have no more standing to seek dissolution now than they did when the trusts commenced. They are not trust beneficiaries. Their interest in dissolution is limited to whether their Plaintiff has standing against them. The objecting parties lack standing to move to dissolve the Trusts or to resist efforts to amend the Trusts.

The express language of the Trust Agreements, combined with the Trustee's untimely Motion, has placed the Black Elk Trusts in limbo. Dissolution, although arguably required by Section 8.01, has not occurred. Meanwhile, the Trustee missed the three-month window to move to extend the Trusts. For that reason, allowance of the motion to extend would conflict with the

Trust Agreements. For now, the Court cannot grant the Trustee's motion because it is not consistent with the terms of the Trust Agreements.

## CONCLUSION

The Black Elk Trusts remain and have not been dissolved. No further action by the Court is presently appropriate.

SIGNED 08/21/2020

                                                    Marvin Isgur
                                   United States Bankruptcy Judge